**Mark M. JOHNSTONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–97–00047–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 7, 1997.

Howard M. Reiner, Bellaire, for Appellant.

Michael Flemming, Dorothy S. Humbert, Houston, for Appellee.

Before ANDELL, COHEN and NUCHIA, JJ.

## OPINION

ANDELL, Justice.

We are asked to decide whether there is clear and convincing evidence in the record to support the appellant's court-ordered commitment to Rusk State Hospital for no more than 90 days. We reverse, finding the evidence insufficient to support the court's finding that the appellant will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, and his condition will deteriorate.

### Fact Summary

The appellant's mother applied for temporary mental health services for her son. The appellant was arrested on a mental health warrant and held pursuant to an emergency detention order at the Harris County Psychiatric Center.

At a hearing, the probate court found the appellant mentally ill. The court also found if not treated, the appellant would suffer severe and abnormal mental, emotional, or physical distress, and would continue to experience deterioration of his ability to function independently. On the basis of these

findings, the court ordered the appellant be committed for court-ordered mental health services at Rusk State Hospital for no more than ninety days.

At the hearing, Psychiatrist Douglas Samuels testified he met with the appellant several times and evaluated him as a chronic schizophrenic. Samuels testified the appellant refused medication based upon religious and cultural reasons. The appellant suffered from auditory hallucinations, and had disorganized, paranoid thinking, said Samuels. Samuels testified the appellant needed medication and hospitalization to stabilize. But, Samuels said the appellant would not likely cause harm to himself or anyone else.

Samuels also testified that without medication or further evaluation, the appellant would continue to suffer severe, abnormal mental and emotional or physical distress, and his ability to function independently would deteriorate. Samuels recommended the appellant be transferred to Rusk.

Mariane Mahnke, nursing care coordinator in the appellant's unit at the Harris County Psychiatric Hospital, testified the appellant spends most of his time pacing and looking very angry. Mahnke also testified that appellant was withdrawn and talked only briefly to the staff and other patients. The appellant questioned everything, wanted an undue amount of explanation, and came across in an angry kind of hostile way, Mahnke told the court.

In his testimony before the court, the appellant said he has never been offered medication directly, or talked with doctors or nurses regarding a treatment program. The appellant denied ever having refused medication. The appellant stated:

I have not refused medication for religious reasons. I have refused, you know, this whole thing on account of cultural religious beliefs. I cannot be a danger to myself because I have been taught better. I'm not a danger to others because I have been taught better. And as to deterioration of

physical, mental and emotional, the hospital environment itself will do that to you.

■ In the record are two medical certificates from doctors who examined Johnstone.[1] Neither doctor discusses the possible deterioration of Johnstone's condition if he is not treated. In her certificate, Dr. Lisa Green states she is of the opinion that the appellant is mentally ill and is likely to cause serious harm to himself and is likely to cause serious harm to others. Dr. Green's basis for her opinion is the appellant's "irritable" and "uncooperative" behavior and hostility to the staff. Dr. Green recommends emergency detention because the "patient's mental state is affecting his behavior such that he is at risk for self-harm and harm to others." In another certificate, Dr. Frederick Moeller states the appellant is likely to cause serious harm to himself or others because of his paranoid, delusional thinking and his refusal of all treatment. Dr. Moeller also states the appellant is unable to care for himself. This evidence from Green and Moeller could, arguably, support a finding that the appellant was likely to harm himself or others, and the State asked the judge to make that finding. The judge refused to do so, which, as discussed below, is a significant factor affecting the disposition of this case.

### Standard of Review

In his sole point of error, the appellant asserts that the evidence is legally and factually insufficient to support the trial court's finding that he is mentally ill, and that as a result of that illness, he will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

■ The State contends the appellant did not preserve error on this issue because he did not file a motion for new trial and did not object during the hearing. We disagree. A motion for new trial is not necessary to raise either legal or factual sufficiency complaints in a nonjury trial. TEX.R.APP. P. 52(d);

---

1. In a commitment case, a court can consider medical certificates even though they have not been admitted into evidence. *K.L.M. v. State,*

735 S.W.2d 324, 325 (Tex.App.—Fort Worth 1987, no writ).

*Strickland v. Coleman,* 824 S.W.2d 188, 191 (Tex.App.—Houston [1st Dist.] 1991, no writ).

■ The Health and Safety Code sets out the standard of review in a case involving court-ordered mental health services.

(a) A judge or jury may determine that a proposed patient requires court-ordered temporary mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

(b) The judge or jury must specify which criterion listed in Subsection (a)(2) forms the basis for the decision.

(c) To be clear and convincing under this section, the evidence must include expert testimony and, unless waived, *evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and the deterioration of ability to function.*

TEX. HEALTH & SAFETY CODE ANN. § 574.034 (Vernon 1992) (emphasis added). The judge committed the appellant based solely on subsection (a)(2)(C). Although the State requested the judge to find that the appellant would likely harm himself or others, the judge refused to make that finding. Therefore, we have no legal authority to uphold the judgment on that basis, which the trial judge rejected.

**Legal and Factual Sufficiency Review**

■ In reviewing no evidence complaints in mental health commitments, we must only review the evidence favorable to the court's judgment to see if there is more than a scintilla. *See Broussard v. State,* 827 S.W.2d 619, 620 (Tex.App.—Corpus Christi 1992, no writ). In reviewing insufficient evidence points on the appeal of a fact finding made by clear and convincing evidence, we review the record to determine if the trial court could reasonably find the fact was highly probable. *Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.—Houston [1st Dist.] 1996, no writ). Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact-finder a firm belief or conviction as to the truth of the facts. *Id.* We will sustain an insufficient evidence point of error only if the fact-finder could not have reasonably found the fact was established by clear and convincing evidence. *Id.* Expert diagnosis alone is not sufficient to confine a patient for compulsory treatment. *Id.* The expert opinion and recommendations must be supported by a showing of the factual bases on which they are grounded. *Id.*

The statute defines clear and convincing evidence as evidence of a recent overt act or continuing pattern of behavior that tends to confirm the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and the deterioration of ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(c) (Vernon 1992).

In *Broussard,* the court dealt with the case of a woman diagnosed with chronic paranoid schizophrenia who was involuntarily committed for temporary mental health services. 827 S.W.2d at 620. Experts testified as to the woman's delusional, incoherent thoughts and her refusal to take medication. *Id.* at 621. A doctor testified that the woman would continue to deteriorate if not treated. *Id.* The doctor noted that the woman had six or seven prior admissions for the same condition. *Id.* at 620. A jury found the woman to be mentally ill and likely to cause serious harm to others, but not herself, unable to make rational and informed decisions as to whether to submit to treatment, and

that if not treated, she would continue to suffer severe and abnormal mental, emotional, or physical distress, and deteriorate. *Id.* at 621. The appellate court found no evidence that the woman was likely to cause harm to others, and no evidence of an overt act or continuing pattern of behavior to show deterioration of her ability to function. *Id.* at 622. The court reasoned that evidence that merely reflects that an individual is mentally ill and in need of hospitalization is no evidence that the statutory standard has been met. *Id.* The court further reasoned that psychotic behavior alone is insufficient to justify commitment on the grounds of mental distress and deterioration of the ability to function independently. *Id.*

The San Antonio Court of Appeals also dealt with a similar fact situation in *In re J.S.C.*, 812 S.W.2d 92 (Tex.App.—San Antonio 1991, no writ). In *J.S.C.*, a doctor testified that the male patient refused medication and that his ability to function independently would continue to deteriorate. *Id.* at 95. The Court found the evidence presented factually insufficient because the State did not show an overt act or continuing pattern of behavior. *Id.* at 96. The doctor's testimony that the patient was unable to take care of himself outside the hospital was insufficient to satisfy the statutory requirements because no specific facts were given to support the statement. *Id.*

■ As in *Broussard* and *In re J.S.C.*, doctors have testified that the appellant in this case has repeatedly refused to take his medication and that the patient's ability to function independently would continue to deteriorate. Both the Corpus Christi and San Antonio courts found that these findings are not specific enough to show an overt act or continuing pattern of behavior. We note that in *Broussard*, even the patient's repeated admissions to mental institutions for the same condition was held insufficient to show a continuing pattern of behavior. We hold the State in this case did not present enough specific evidence to meet the requirements of the statute.

■ The Austin Court of Appeals did find a continuing pattern of behavior or a recent overt act in the case of *L.S. v. State*, 867 S.W.2d 838 (Tex.App.—Austin 1993, no writ). In *L.S.*, the court wrestled with a renewal of an order for extended mental health services for a period not to exceed 12 months.[2] *Id.* at 840. The doctor testified the patient was mentally retarded and schizophrenic. *Id.* at 842. The doctor testified that if not treated, the patient would deteriorate. *Id.* The doctor then referred to three patterns of behavior of the patient to illustrate the need for hospitalization: 1) burning his skin with cigarettes, 2) drinking excessive amounts of water, causing him to gain ten pounds in an eight-hour period, and 3) an unauthorized departure from the psychiatric facility for six days. *Id.* A social worker at the hospital also testified that the patient had been assaulted by another patient about two or three months before trial, and had been assaulted when he was not in the hospital because of his intrusiveness. *Id.* at 842–43. The court found the testimony provided sufficient evidence of a continuing pattern of behavior or recent overt acts. *Id.* at 843.

In *L.S.*, the State presented specific evidence of repeated acts to prove a continuing pattern of behavior to which the patient resorted when he was not hospitalized. In the case at bar, the State presented only general actions of the appellant. The State contends the whole of the appellant's testimony would tend to prove inability to function independently or make rational decisions regarding treatment and a likelihood of continued severe and abnormal mental, emotional, or physical distress. The State also contends the overt act or continuing pattern of behavior can be found in the appellant's testimony that shows patterns of speech and reasoning that would tend to confirm the expert testimony of a mental illness diagnosis.

■ We do not find the State's argument compelling. The State did not prove its case. There is no overt act or continuing pattern of behavior. Evidence that merely reflects that

---

**2.** We note the court applies the same standard of clear and convincing evidence in an extended mental health services case as in a temporary mental health services case. Tex. Health & Safety Code Ann. § 574.035(d) (Vernon 1992).

an individual is mentally ill and in need of hospitalization does not meet the statutory standard. *Broussard,* 827 S.W.2d at 622.

We are reluctant to deny court-ordered treatment for a man who is ill. However, we do not find the State proved its case by clear and convincing evidence, as it must.

We sustain the appellant's sole point of error. We reverse the judgment of the probate court and render judgment denying the State's petition for temporary court-ordered mental health services.

COHEN, J., concurring.

NUCHIA, J., dissenting.

On a motion for en banc consideration, SCHNEIDER, C.J., and COHEN, MIRABAL, WILSON, ANDELL and TAFT, JJ., voted to deny en banc consideration.

O'CONNOR, HEDGES and NUCHIA, JJ., voted to grant en banc consideration.

COHEN, Justice, concurring.

This is a close case. It is also disturbing. Both Justice Andell's and Justice Nuchia's opinions have much to commend them.

This case exposes the conflicting agendas of the judicial system and the health care system. Much evidence shows that appellant is sick. The health care system exists solely to provide care for the sick. The judicial system has the same concern, as reflected by the Health and Safety Code, but that code also strictly limits the imposition of forced mental health treatment.

The potential for abuse from government ordered mental health treatment is well documented in this and other countries. Certainly, nothing in this case suggests any abusive motive or treatment, but I believe the potential for it is what persuaded the legislature to pass a restrictive statute and persuaded two of our sister courts to set aside orders for forced mental health treatment despite evidence arguably stronger than here. *See Broussard v. State,* 827 S.W.2d 619, 620–21 (Tex.App.—Corpus Christi 1992, no writ) (describing appellant as a delusional paranoid schizophrenic who needed further treatment to avoid deterioration and to pro-

tect her from harming herself and others); *In re J.S.C.,* 812 S.W.2d 92, 94 (Tex.App.—San Antonio 1991, no writ) (explaining appellant was catatonic, hallucinating, delusional, helpless, unable to care for himself or to remember, disoriented, his speech was 50% irrelevant, and he was "totally out of it").

Why would the legislature and the courts make it so hard for the State to give treatment without consent to people who are mentally ill? *See Broussard,* 827 S.W.2d at 622 ("While we are reluctant to deny court-ordered treatment to a woman who is obviously ill, we cannot lower the requirements imposed under § 574.034(c) of the Texas Mental Health Code regarding proof by clear and convincing evidence."). The reason must be to keep the State out of the business of forced treatment except in compelling cases, as defined by Health and Safety Code § 574.034 (Vernon 1992). While the State has a strong interest in protecting the mental health of each citizen, including appellant, it has an even greater interest in preserving the civil liberties of all citizens. This is no abstract proposition. It means that some people who need treatment will not get it, and for that, they and others will probably suffer.

Freedom is not cheap, much less free. The price for civil liberties must be paid, however reluctantly. Today, I choose to pay it by voting to reverse this order for forced treatment.

NUCHIA, Justice, dissenting.

I dissent from the Court's judgment reversing the judgment of the trial court. A schizophrenic patient's refusal to take medicine is clear and convincing evidence that he will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress.

The majority insists that this is merely evidence that an individual is mentally ill and in need of hospitalization. But, an individual with schizophrenia who does not take his medication ends up in a downward spiral of mental and emotional degradation. The evidence presented at the hearing supports that.

Psychiatrist Douglas Samuels testified the appellant suffered from auditory hallucinations and had disorganized, paranoid thinking. Samuels further determined that without medication or further evaluation, the appellant would continue to suffer severe, abnormal mental and emotional or physical distress, and his ability to function independently would deteriorate.

In her medical certificate, Dr. Lisa Green recommended emergency detention because the "patient's mental state is affecting his behavior such that he is at risk for self-harm and harm to others." Dr. Frederick Moeller states in his medical certificate that the appellant is likely to cause serious harm to himself or others because of his paranoid, delusional thinking and his refusal of all treatment. Dr. Moeller also states the appellant is unable to care for himself.

The majority follows the reasoning of the Corpus Christi and San Antonio Courts of Appeals and holds the State did not present specific instances of overt behavior. I would not.

I would find the continuous refusal to take medication an overt behavior and find the evidence sufficient to support the trial court's finding that the appellant will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, and his condition will deteriorate.