NO. 12-04-00297-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE 
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF J.S.                                     §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant J.S. appeals from an order of commitment for temporary inpatient mental health
services. After a hearing without a jury, the trial court ordered J.S. committed to Rusk State Hospital
for a period not to exceed ninety days. In one issue, J.S. asserts the evidence is legally and factually
insufficient to support that order. We affirm.
 
Background
            On September 7, 2004, an application for court-ordered temporary mental health services was
filed requesting the court commit J.S. to Rusk State Hospital for a period not to exceed ninety days. 
The application was supported by a certificate of medical examination for mental illness, prepared
by a physician, Dr. William Todd, who had examined J.S. on September 6. Dr. Todd diagnosed J.S.
as suffering from bipolar I disorder. He found that J.S. is mentally ill and likely to cause serious
harm to himself. 
            Dr. Todd reached these conclusions because, on or about September 5, J.S. attempted suicide
by pointing a gun at his head, inflicting lacerations to his harm, and attempting to drown himself. 
Dr. Todd found that J.S. presents a substantial risk of serious harm to himself or others if not
immediately restrained, an opinion he based on J.S.’s behavior. Dr. Todd formed this opinion
because J.S. was suicidal as set out above.
            On September 8, 2004, J.S. was examined by Dr. Charles Plyler who then also prepared a
certificate of medical examination for mental illness. Dr. Plyler diagnosed J.S. with bipolar disorder
and indicated that J.S. is mentally ill and likely to cause serious harm to himself. He came to this
conclusion because J.S. had attempted suicide by holding a gun to his head and then minimized
having threatened suicide by holding a gun to his head, hanging himself, cutting his wrist, and
drowning. Dr. Plyler is also of the opinion that J.S. presents a substantial risk of serious harm to
himself or others if not immediately restrained, which is demonstrated by J.S.’s behavior.
             Dr. Plyler testified at the hearing, explaining that J.S. is suffering from bipolar disorder. He
testified that, because J.S. made a verbal threat to kill himself and held a gun to his head, and talked
about possibly hanging himself and cutting his wrists, the doctor thinks J.S. is likely to cause serious
harm to himself. Dr. Plyler based his testimony on his examination of J.S., a review of his medical
history, and on reasonable medical probability. The doctor stated that Rusk State Hospital is the
least restrictive available option for J.S. at this time. 
            On cross-examination, Dr. Plyler testified that the threat was reported by the referring
authority and by J.S. The doctor was not aware of any attempts to harm himself since J.S. had been
in the hospital. He stated that, to an extent, J.S. has been a cooperative patient and is not as self-destructive as he was. J.S. has a history of non-compliance and would not be well suited for
outpatient care at this time. The doctor stated that J.S. would not need to stay in the hospital for
more than a couple of weeks. In that time, he would try to find a suitable psychotropic medication
to alter some of the symptoms. Dr. Plyler described J.S. as better “in terms of self-injury, but he still
has not demonstrated much insight into his condition.” The doctor explained that J.S. cut his arm
before coming to the hospital and he tends to minimize the seriousness of what is going on with him.
            J.S. testified in his own behalf. He said he does not need additional time in Rusk State
Hospital, explaining that he should be in the military hospital instead. When asked to explain why
he felt the Veterans Administration hospital could better serve his needs, he responded that “here,
this is actually depressing me.” He said he has a place to go if released from the hospital and he has
no desire to hurt himself, describing his attempt as a stupid, one-time thing.
            The court stated on the record that he was going to grant the State’s motion and let him stay
and get his medication straight. Dr. Plyler then interjected that J.S. is not eligible for treatment
through the Veterans Administration because, before even finishing boot camp, he was discharged
for hitting a superior officer in the nose. 
            The trial court entered an order for temporary inpatient mental health services after
determining that the evidence supports the allegations that J.S. is mentally ill and that he is likely to
cause serious harm to himself. The court ordered J.S. committed to Rusk State Hospital for a period
not to exceed ninety days.
 
Sufficiency of the Evidence
            In his sole issue, J.S. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. He asserts that, because the State did not introduce into evidence his
medical records or the physicians’ certificates supporting the application for commitment, those
documents were not properly before the trial court and are not properly a part of the appellate record. 
He contends that, in the absence of those records, which contain the factual bases of his commitment, 
the evidence merely shows, if anything, that he is mentally ill and may be in need of hospitalization. 
He argues that the doctor’s testimony alone is not probative evidence and the State did not present
the required expert testimony needed to support the commitment. Accordingly, he argues, the
evidence does not show that J.S. is likely to cause serious harm to himself and the State failed to
meet its evidentiary burden under the statute. 
Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 
            In addressing a factual sufficiency of the evidence challenge, we must consider all the
evidence in the record, both that in support of and contrary to the trial court’s findings. In re C.H.,
89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the
factfinder could reasonably have found to be clear and convincing. Id. at 25. We must determine 
whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about
the truth of the State’s allegations. Id. We must consider whether disputed evidence is such that a
reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. In
re J.F.C., 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the
factfinder. In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of
the witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
Applicable Law
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm
to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by his inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make a
rational and informed decision as to whether or not to submit to treatment. Tex. Health & Safety
Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the evidence
must include expert testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient
or others, or the proposed patient’s distress and the deterioration of his ability to function. Tex.
Health & Safety Code Ann. § 574.034(d) (Vernon 2003).
            The Texas Mental Health Code requires at least two certificates of medical examination for
mental illness to be completed by two different physicians who have examined the patient and filed
with the application for court-ordered mental health services. Tex. Health & Safety Code Ann.
§ 574.009 (Vernon 2003). A court can consider these certificates that are on file, in the record of the
case, even though they are not admitted into evidence at the hearing. Johnstone v. State, 961 S.W.2d
385, 387 n.1 (Tex. App.–Houston [1st Dist.] 1997, no writ); K.L.M. v. State, 735 S.W.2d 324, 325
(Tex. App.–Fort Worth 1987, no writ). 
Analysis
            The State provided expert testimony explaining that J.S. is mentally ill and describing his
behavior and statements. In his certificate of medical examination, Dr. Todd explained that J.S. was
suicidal, naming three different methods for killing himself that J.S. considered. Dr. Plyler stated in
his certificate of medical examination that J.S. had threatened to kill himself four different ways. At
the hearing, Dr. Plyler testified that he believed J.S. was likely to cause serious harm to himself
because he verbally threatened to kill himself, held a gun to his head, and talked about hanging
himself and cutting his wrists. This is expert testimony of a recent overt act that tends to confirm the
likelihood of serious harm to himself. The trial court could have disbelieved J.S.’s testimony that his
desire to harm himself was a one-time thing. See In re J.F.C., 96 S.W.3d at 266.
            Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that J.S. is likely to cause serious
harm to himself. See In re J.F.C., 96 S.W.3d at 266. The evidence is legally sufficient to support
the trial court’s order. See id.
            In addressing J.S.’s factual sufficiency complaint, we consider the evidence, giving due
consideration to evidence the factfinder could reasonably have found to be clear and convincing. In
re C.H., 89 S.W.3d at 25. J.S. assured the court that his desire to harm himself was a “one-time
thing.” The trial court was entitled to disbelieve J.S.’s testimony and disregard evidence contrary to
the State’s position. See id. at 27. Accordingly, in light of the entire record, the evidence that the trial
court could not have credited in favor of its findings is not so significant that it could not reasonably
form a firm belief or conviction that J.S. is mentally ill and is likely to cause serious harm to himself. 
See id. Thus, the evidence is factually sufficient to support the trial court’s findings. Because we
hold the evidence is both legally and factually sufficient to support the trial court’s order, we overrule
J.S.’s sole issue.Disposition
            We affirm the trial court’s order of commitment for temporary inpatient mental health
services.
 
 
 
                                                                                                   JAMES T. WORTHEN 
                                                                                                               Chief Justice
 
 
 
Opinion delivered June 30, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)