Reversed and Rendered and Majority and Dissenting Opinions filed
February 20, 2007









Reversed
and Rendered and Majority and Dissenting Opinions filed February 20, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-01273BCV

_______________

 

MARLIN DEANDRE HOUSE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 739,579

                                                                                                                                               


 

M A J O R I T Y   O
P I N I O N 

Appellant, Marlin
Deandre House, appeals an order extending inpatient mental health treatment for
a period of one year.  In three issues, appellant contends (1) the
evidence is legally insufficient to support the order, (2) the evidence is
factually insufficient to support the order, and (3) the recommitment order is
void because it does not specify which statutory criteria formed the basis for
recommitment.  Because we find the evidence legally insufficient to
support the order, we reverse and render.     

 

 

I. Background  

On December 6,
1996, appellant killed his mother by stabbing her with a kitchen knife ninety-three
times.  Appellant was indicted for her murder.  In August 1997, a
psychologist concluded that appellant was Asuffering from a
mental illness which included paranoid ideation and auditory hallucinations@ and that
appellant met the requirements for the insanity defense.  After a bench
trial on November 3, 1997, the trial court found appellant not guilty by reason
of insanity.  A month later, he was committed to Vernon State Hospital for inpatient treatment.   In January 1999, following a physician=s recommendation,
appellant was transferred to Rusk State Hospital.  Since then, the trial
court has annually found that appellant meets the requirements for inpatient
recommitment.  This is an appeal from the most recent recommitment order
signed November 28, 2005.

II.  Applicable  Statutory Provisions and Standard of
Review 

Under former
article 46.03 of the Texas Code of Criminal Procedure, applicable to this case,
recommitment hearings for persons found not guilty by reason of insanity must
be conducted pursuant to the Texas Mental Health Code.  See Act of
May 25, 1983, 68th Leg., R.S., ch. 454, 1983 Tex. Gen. Laws 2640, 2644B46 (repealed 2005)
(current version at Tex. Crim. Proc.
Code Ann. art. 46C.261 (Vernon Supp. 2006)).  Under section 574.066
of the Mental Health Code, a court may renew an order for inpatient mental
health services if it finds the patient meets the criteria for involuntary
commitment set forth in section 574.035(a) of the Mental Health Code.  See
Tex. Health & Safety Code Ann.
' 574.066(f)
(Vernon 2003) (specifying the procedure for the renewal of an order for
extended mental health services).

Section 574.035(a)
provides that a court may order extended inpatient mental health services if
the trier of fact finds, by clear and convincing evidence, that, among other
requirements, the proposed patient meets the following criteria:

(1) the proposed patient is
mentally ill; and 

(2) as a result of that mental
illness the proposed patient:

(A) is likely to cause serious harm
to himself;

(B) is likely to cause serious harm
to others; or 

 

(C) is:

(i) suffering severe and abnormal
mental, emotional, or physical distress;

(ii) experiencing substantial
mental or physical deterioration of the proposed patient=s ability to function
independently, which is exhibited by the proposed patient=s inability, except for reasons of
indigence, to provide for the proposed patient=s basic needs, including food, clothing, health, or
safety; and

(iii) unable to make a rational and
informed decision as to whether or not to submit to treatment.

 

Tex. Health & Safety Code Ann. ' 574.035(a)
(Vernon 2003).  The trial court must specify which of the criteria under
subsection (a)(2) forms the basis for recommitment.  Tex. Health & Safety Code Ann. ' 574.035(c)
(Vernon 2003).

In order to be
clear and convincing under section 574.035(a), the evidence must include expert
testimony and, unless waived, evidence of a recent overt act or a continuing
pattern of behavior that tends to confirm (1) the likelihood of serious harm to
the proposed patient or others, or (2) the proposed patient=s distress and the
deterioration of the proposed patient=s ability to
function.  Tex. Health & Safety
Code Ann. ' 574.035(e) (Vernon 2003). The court
cannot make its findings solely from certificates of examination for mental
illness but shall Ahear testimony.@  Tex. Health & Safety Code Ann. ' 574.035(g)
(Vernon 2003).  Further, the trial court may not enter an order for
extended mental health services unless appropriate findings are made and are
supported by testimony taken at the hearing.  Id.  This
testimony must include competent medical or psychiatric testimony.  Id.

 

When the burden of
proof is heightened to a clear-and-convincing standard, the standard of review
for legal sufficiency of the evidence is also heightened.  In re F.M.,
183 S.W.3d 489, 492 (Tex. App.CHouston [14th Dist.] 2005, no pet.). 
In a legal sufficiency review when the burden of proof is clear-and-convincing
evidence, the reviewing court must consider all the evidence in the light most
favorable to the finding to determine whether a reasonable trier of fact could
have formed a firm belief or conviction as to the truth of the allegations
sought to be established.  In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002);  State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979).

III.  Legal Sufficiency of the Evidence 

In his first
issue, appellant argues that under the clear-and-convincing standard that the evidence
is legally insufficient to support the trial court=s recommitment
order.  We agree.  Preliminarily, we note that the trial court did
not make written findings regarding which criterion of section 574.035(a) it
relied on when ordering recommitment.  However, the trial court concluded
at the recommitment hearing that appellant is mentally ill, and as a result of
his mental illness, he is likely to cause harm to himself or others, as
outlined under section 574.035(a).[1]

Appellant contends
there is no evidence of a recent overt act or a continuing pattern of behavior
tending to confirm the likelihood of serious harm to himself or others as
required by section 574.035(e).  It is not clear from the trial court=s comments whether
it found a recent overt act or a continuing pattern of behavior.  The
trial court stated: A[B]ased on his history he=s had ideation of
both [harm to himself and others] and acting out in one of those.@ 
Nevertheless, even if these comments can be construed as a finding of a recent
overt act, a continuing pattern of behavior, or both, appellant contends there
is no evidence to support the findings.

 

 

Specifically,
appellant asserts the evidence shows only Avague behaviors,@ on appellant=s part, which
indicate at most that he is mentally ill, but do not constitute a recent overt
act or a continuing pattern of behavior tending to confirm the likelihood of
serious harm to himself or others.      

Evidence showing
only that an individual is mentally ill and in need of hospitalization does not
meet the statutory requirements for confinement.  See In re L.H.,
183 S.W.3d 905, 911 (Tex. App.CTexarkana 2006, no pet.); In re K.D.C.,
78 S.W.3d 543, 551 (Tex. App.CAmarillo 2002, no pet.); D.J. v. State,
59 S.W.3d 352, 355 (Tex. App.CDallas 2001, no pet.); Johnstone v.
State, 961 S.W.2d 385, 389B90 (Tex. App.CHouston [1st
Dist.] 1997, no writ); Broussard v. State, 827 S.W.2d 619, 622 (Tex.
App.CCorpus Christi
1992, no pet.); In re J.S.C., 812 S.W.2d 92, 95 (Tex. App.CSan Antonio 1991,
no writ).  A[B]are psychiatric expert opinion of a >potential danger= to others is
insufficient to support a commitment.@  Broussard,
827 S.W.2d at 622.  Rather, an expert=s opinions must be
supported by a showing of the factual basis.  Id.; In re J.S.C.,
812 S.W.2d at 95. The expert=s conclusions cannot merely mirror the
statutory standards for commitment without a factual basis.  K.T. v.
State, 68 S.W.3d 887, 893 (Tex. App.CHouston [1st
Dist.] 2002, no pet.).

Further, even if a
court finds a recent overt act or a continuing pattern of behavior, the recent
overt act or continuing pattern of behavior must Atend to confirm@ one of the
section 574.035(a)(2) requirements. See In re J.J.K., 2003 WL
22996950, at *1, 4 (Tex. App.CHouston [14th Dist.] Dec. 23, 2003, no
pet.) (mem. op.) (finding overt acts where the patient engaged in verbal
altercations and knocked a door off its hinges while in a seclusion room but
holding that these two overt acts did not tend to confirm the patient would
cause serious harm to self or others).   

A.      Evidence at the Recommitment Hearing 

 

At the
recommitment hearing on November 28, 2005, the State presented testimony from
Dr. Robert Altschuler and entered appellant=s complete medical
records into evidence.[2]  Dr. Robert
Altschuler is a semi-retired, private psychiatrist.  He previously
examined appellant for his 2004 recommitment hearing.  On October 7,
2005,  Dr. Altschuler examined appellant for approximately one-and-a-half
hours for the 2005 recommitment hearing at issue.  

In a letter to the
trial court on October 18, 2005, he opined that appellant Acontinues to be a
danger to himself and others if placed in a less restrictive environment.@ At trial, Dr.
Altschuler testified as to the factors on which he based his conclusion. 
These factors  focused on appellant=s lack of insight
into his illness, guardedness in answering Dr. Altschuler=s questions, and
paranoia.  

 

 First, Dr. Altschuler
testified that appellant had a lack of insight into his illness. He explained
he Areally hoped@ that appellant Ahad a much better
understanding of his psychiatric illness@ that resulted in
his mother=s death.  Specifically, Dr. Altschuler testified
appellant had no understanding what occurred in 1996 when his mother
died.  During the interview, when Dr. Altschuler asked appellant what had
happened to him, appellant said people have told him that Ahe may have been
responsible for his mother=s death.@  Dr.
Altschuler found this statement significant because if appellant could not
understand what he did, then he may now feel he has been unjustly
hospitalized.  Dr. Altschuler opined that appellant knew why he was at Rusk State Hospital only because others had told him during his therapy.  Further, Dr.
Altschuler explained it was important for paranoid schizophrenics to deal with
their underlying aggressive act because, by definition, paranoid schizophrenics
believe people are out to get them. However, when asked if appellant=s lack of insight
into his illness was a continuing pattern of behavior, Dr. Altschuler
testified, AI don=t think those two words can go
together.  He continues to have good behavior at Rusk most of the time.@  When asked
if appellant=s lack of insight would lead to a likelihood of
serious harm to himself or others if placed in an outpatient setting, Dr.
Altschuler stated that he thought lack of insight and paranoia were the reasons
why appellant was a likely harm to himself or others.  When asked if
appellant=s lack of insight into his illness could lead to a
deterioration of his ability to function if placed in an outpatient setting,
Dr. Altschuler explained that appellant=s failure to deal
with some of the issues associated with his illness could possibly cause a
deterioration of his mental condition and refusal to take psychotropic
medications. 

Furthermore, Dr.
Altschuler testified appellant had experienced paranoid thoughts in the past
year.  Dr. Altschuler relied on a January 28, 2005 note in appellant=s medical records
indicating Aparanoid thought content.@  Due to
appellant=s lack of understanding of his illness and paranoid
thoughts, Dr. Altschuler opined appellant might walk away from an outpatient
treatment setting.  

On cross
examination, Dr. Altschuler testified appellant knew the name of his mental
illness, knew that he had suffered hallucinations in the past, defined a
hallucination as Ahearing voices,@ and said why he
thought he was in the hospital.  When asked what specific words appellant
used in the interview to indicate he was suffering from paranoia, Dr.
Altschuler said there were Ano exact words.@  Instead,
Dr. Altschuler concluded appellant was suffering paranoia based his Aguardedness@ in answering Dr.
Altschuler=s questions and on the medical record notes indicating
paranoia.  Dr. Altschuler said appellant was guarded because he Ashut-down@ when asked about
issues related to his mother=s death. As for the paranoia, Dr.
Altschuler said that the medical notes did not indicate why the nurse wrote
appellant was suffering from paranoia.  Appellant=s counsel also
referred to a portion of Dr. Altschuler=s report filed
with the trial court in which Dr. Altschuler wrote that as reflected in a
nursing assessment dated October 7, 2004, appellant had decompensated Aunder the stress
and disappointment of returning to Rusk State Hospital@ after his last
recommitment and there was a Adeterioration of self care, homicidal
threats, aggression and decompensation.@  However,
when appellant=s counsel showed Dr. Altschuler the nurse assessment
report from October 7, 2004, Dr. Altschuler agreed that the portion of the
nurse assessment report stating Adecompensation,
deterioration of self care, homicidal threat, aggression@ was actually a Ahistory entry.@  

 

B.     
Analysis

 

Appellant argues
that the evidence offered by the State only shows appellant is mentally ill but
does not satisfy the clear-and-convincing requirement of a recent overt act or continuing
pattern of behavior tending to confirm the likelihood of serious harm to
appellant or others. See Tex.
Health & Safety Code Ann. ' 574.035(e). 
Specifically, appellant contends that Dr. Altschuler=s assertions are
based on vague behaviors such as appellant=s Aguardedness,@ Alack of insight,@ and Aparanoid ideation,@ which at best
prove he is mentally ill.  We agree.  

First, we note
that section 574.035(e) does not define a Arecent overt act
or continuing pattern of behavior.@  We also
note Texas courts of appeals finding a Arecent overt act
or a continuing pattern of behavior@ have tended to
focus on identifiable, observable, physical acts.  For example, in  L.S.
v. State, the Austin Court of Appeals found sufficient evidence of a recent
overt act or a continuing pattern of behavior where the patient ritualistically
burned the skin on his fingers with cigarettes, drank water excessively,
causing him to gain ten pounds within an eight-hour period, and left the
hospital without authorization for six days.  867 S.W.2d 838, 842 (Tex.
App.CAustin 1993, no
writ); see D.M. v. State, 181 S.W.3d 903, 904 (Tex. App.CDallas 2006, no
pet.) (finding evidence of a recent overt act or a continuing pattern of
behavior where the female patient had made a comment to and pushed a male
patient, hid contraband in a locker, and attacked the staff when they
confiscated the contraband, requiring three people to subdue her);  In
re S.E.W., 2002 WL 31599910, at *3 (Tex. App.CHouston [14th
Dist.] Nov. 21, 2002, no pet.) (mem. op.) (finding evidence of an overt act
where the medical records indicated appellant had been found wandering in a
church;  told the church workers that her father was trying to kill her;
and did not know where she was, her age, whom she lived with, or how she came
to be in the church). 

 

In support of his
argument that the evidence proved only appellant was mentally ill, he cites
cases in which testimony reflecting only that a patient was mentally ill was not
sufficient to meet the clear-and-convincing standard under the statute.  See
Broussard, 827 S.W.2d at 621B22 (holding
evidence of delusions, incoherency of thoughts, and  tendency  to
ramble about various ideas that had no relationship to the topic being
discussed only proved patient was mentally ill);  D.J., 59 S.W.3d
at 355B57 (finding no
overt act or pattern of behavior where doctor testified only that defendant was
paranoid schizophrenic, likely to harm himself, suffer severe distress,
deteriorating, delusional, not taking medication, not able to make treatment
decision, and left halfway house); Johnstone, 961 S.W.2d at 389B90 (finding
evidence was legally insufficient to show overt act or continuing pattern of
behavior where evidence only showed patient suffered from chronic
schizophrenia, auditory hallucinations, paranoid thinking, uncooperative,
hostile to staff, and refused to take his medication); In re J.S.C., 812
S.W.2d at 95 (finding evidence legally insufficient to support commitment order
where evidence only showed patient suffered from chronic schizophrenia,
hallucinations, and was catatonic).

In particular,
appellant asserts that Whitaker v. State is instructive.  Nos.
01-03-00576-CV & 01-03-00577-CV, 2003 WL 22413511 (Tex. App.CHouston [1st
Dist.] Oct. 23, 2003, no pet.).  In Whitaker, the defendant was
found incompetent to stand trial for the alleged offenses of assault and
criminal mischief.  Id. at *1.  At the commitment
hearing, in addition to the psychiatrist=s diagnosis of the
defendant=s mental illness, the State offered the psychiatrist=s expert opinion
that without treatment the defendant would again be in a serious psychotic
state and would be a danger to himself and others. Id. at *3.  The
defendant believed he owned large amounts of property, was of royal heritage,
and suffered paranoid thoughts that people were trying to take advantage of
him.  Id.  The psychiatrist testified he was concerned
that because the defendant did not recognize he had a mental illness, he would
stop taking his medicine and deteriorate.  Id.  He also
opined that the defendant was a danger to himself and others because due to his
delusions, he could easily go on someone=s property, say he
owns it, and become involved in an argument.   Id.  The 
jury found the defendant was mentally ill and likely to cause harm to himself
and others and if not treated would continue to suffer severe and abnormal
mental, emotional, or physical distress and continue to experience substantial
mental or physical deterioration of his ability to function
independently.  Id. at *1B2.  

 

On appeal, the
defendant argued that the State failed to produce any evidence of a recent
overt act.  Id. at *2.  The First Court of Appeals
noted that the psychiatrist=s testimony tracked the language of
section 574.035 and merely summarized his report.  Id. at *3. 
Further, the court explained that the behavior the psychiatrist relied on as
the factual basis for his opinion Aconstituted
nothing more than evidence of [the defendant=s] mental illness
and did not amount to evidence tending to confirm that [the defendant] was
experiencing substantial mental or physical deterioration.@  Id.   As a result, the court held the evidence was legally
insufficient because there was no evidence of a recent overt act or continuing
pattern of behavior tending to confirm the likelihood of serious harm to the
defendant or others or the defendant=s distress and
deterioration of his ability to function.  Id.

We agree with
appellant that this case is similar to Whitaker.  First, in both
cases, the psychiatrist=s opinion is based on symptoms of the
mental illness.  In Whitaker, the expert relied on delusions and
paranoid thoughts that people were trying to take advantage of him.  Id.   In this case,  Dr. Altschuler also relied on symptoms of
appellant=s mental illness.  Dr. Altschuler=s opinion that
appellant will be a harm to himself or others is based on Alack of 
insight@ into his illness
and paranoia.  Further, Dr. Altschuler testified appellant said Ano exact words@ indicating he was
paranoid, the January 29, 2005 note did not indicate why the nurse wrote Aparanoid ideation@ in the note, and
appellant never said that he thought people were out to get him.  Neither
Dr. Altschuler=s interview nor the medical records provided an
identifiable overt act or continuing pattern of behavior.  Instead, Dr.
Altschuler relied on appellant=s Aguardedness@ in answering Dr.
Altschuler=s questions on the specifics of what occurred when his
mother died and a nurse=s note with no indication why she wrote Aparanoid ideation.@[3] 

 

Further, here, as
in Whitaker, the State=s psychiatrist, Dr. Altschuler, testified
he was Aconcerned@ because if appellant
did not adequately recognize his mental disorder, he would most likely stop
taking his medications, which would cause serious deterioration, making him a
danger to himself or others.  In drawing this conclusion, both Dr.
Altschuler and the psychologist in Whitaker relied upon several
inferences to predict that harm would come to the appellant or others.  In
Whitaker, because the defendant experienced delusions that he owned
land, the psychiatrist inferred his delusions could cause him to trespass on
another person=s property, causing a possible argument and
violence.  Id.  The court considered the delusions but did not
find that they were sufficient to constitute an overt act sufficient to satisfy
section 574.035. Id.   In this case, Dr. Altschuler=s theory of
appellant=s possible danger to self or others was as follows: if
appellant were granted outpatient status, due to his lack of insight into his
illness and possible paranoia, he would stop taking his medication; the
caseworkers at the outpatient facility would not notice, which would cause a
deterioration of his mental state; the caseworkers would also not notice the
deterioration, which would then render appellant a danger to himself or
others.  We agree with appellant that these inferences, similarly
considered in Whitaker, are not enough to supplant  the lack of
evidence of a recent overt act or continuing pattern of behavior that tends to
show appellant will cause harm to himself or others.  

 

In response, the
State contends that this case is similar to Campbell v. State. Nos.
14-99-00620-CV & 14-99-00621-CV, 2000 WL 675142 (Tex. App.CHouston [14th
Dist.] May 25, 2000, pet. denied).  We disagree.  In Campbell, the defendant attacked his girlfriend attempting to remove both of her
eyes with a knife.  Id. at *1.  He was found not guilty
by reason of insanity for aggravated assault and kidnaping. Id.  On
appeal from a recommitment order, he argued the trial court=s findings were
unsupported by evidence of a recent overt act or continuing pattern of
behavior.   Id. at *6.  The State=s expert testified
that Campbell presented a risk of serious harm to both himself and to others if
not immediately restrained.  Id. at *4.  The expert
explained that Campbell would be a A>a severe risk to
the general public at large, particularly females=@ and that he had a
A>pattern of hostile
dependency upon women=@ which remained to be dealt with and if
not resolved would place women close to him at risk for harm.  Id.  Furthermore, a written report was admitted into evidence that Campbell should have received long-term psychotherapy when he was transferred to Rusk;
however, he never received the treatment.  Id.  Therefore,
the expert opined that, because the treating professionals at Rusk Hospital never addressed factors in Campbell=s psyche which led
to the assault, including his hostility towards women, his A>affinity for rough
sex,=@ or how he should
confront negative emotions with people he is close to, the factors were still
present.   Id.  Furthermore, the expert testified
that he was in denial about having any anger or hostility, having an affinity
for rough sex, and about accepting responsibility for what he did.  Id. *4B5.  In a
narrow holding, this court found a Acontinued pattern
of behavior@ where ACampbell continued
to exhibit a pattern of denial with regards to his anger and hostility toward
women.@  Id. at
*6.  This court relied on the expert=s testimony that Agiven Campbell=s vicious attack
on his girlfriend, [his] continued state of denial, and his complete lack of
treatment while at Rusk State Hospital on the issue of hostility,@ to conclude he
would continue to be dangerous to others.  Id. (emphasis
added). 

The State contends
this case is factually similar to Campbell because appellant=s inability to
discuss his underlying crime is a continuing pattern of behavior and his denial
of his January 29, 2005 delusional state is a recent overt act.  We
disagree. 

 

First, the basis
for Dr. Altschuler=s testimony as to appellant=s inability to
discuss his underlying crime was that appellant was Aguarded@ in his answers,
his answers Alacked emotion,@ and he did not
answer when asked about what occurred in 1996 when his mother died.  We do
not believe appellant=s refusal to openly discuss what occurred
in 1996 during a one-and-half-hour interview with someone he did not know or
see regularly amounts to a continuing pattern of behavior.  Further, at
the hearing when Dr. Altschuler was asked whether appellant=s Alack of insight@ into his illness
was a continuing pattern of behavior, Dr. Altschuler did not agree. 
Instead, Dr. Altschuler testified, AI don=t think those two
words can go together.  He continues to have good behavior at Rusk most of
the time.@  This was Dr. Altschuler=s only testimony
as to a continuing pattern of behavior, and he did not testify specifically
that appellant=s inability to discuss the underlying crime was a
continuing pattern of behavior.  

Second, there are
additional facts that distinguish this case from Campbell.  In Campbell ,  the appellant continuously denied his hostile feelings
toward women that led him to assault his girlfriend, and there was evidence
that he had not received any treatment for those hostile feelings.  Id. at *5.  The doctor who treated Campbell at Rusk State Hospital testified that he was experiencing denial.  Id.  In this
case, there is no evidence in the record that appellant did not receive the
requested treatment for his illness at Rusk State Hospital, as there was in Campbell. 
In addition, the doctors treating appellant at Rusk State Hospital attached
reports to the hospital superintendent=s letter
recommending that appellant be released to an outpatient setting.  These
opinions contrast with the opinions of Campbell=s treating doctor
who testified that his unresolved issues with women could be grounds for
recommitment.  

 

We disagree with
the State=s argument that appellant=s Adenial of his
delusional state@ in a January 29, 2005 note in his medical
records represents a recent overt act.[4] 
Dr. Altschuler relies on the entry in the note that states he is not
delusional.  We cannot identify any entries in the January 29, 2005
medical record note or Dr. Altschuler=s testimony which
would support the assertion that appellant=s denial of
delusions constitutes an Aovert act.@  Succinctly,
an overt act that renders appellant a danger to himself or others must be more
than appellant=s statement that he is not delusional. 

 The 
State asserts that the cases cited by appellant are distinguishable, with the
exception of Whitaker, because they are appeals from court orders
committing a person to 90 days for temporary inpatient mental health services,
and none involved a patient with an underlying criminal case.  However,
former article 46.03 of the Code of Criminal Procedure clearly provides
recommitment hearings are to be conducted pursuant to the provisions of the
Mental Health Code. See Act of May 25, 1983, 68th Leg., R.S., ch. 454,
1983 Tex. Gen. Laws 2640, 2644B46 (repealed 2005) (current version at Tex. Crim. Proc. Code Ann. art. 46C.261
(Vernon Supp. 2006)).  These Mental Health Code provisions are also
applied for the purpose of committing a mentally ill person in a civil context.
See Tex. Health & Safety Code
Ann. ' 574.034 (Vernon 2003);  In re F.M., 183
S.W.3d at 491B92.  Therefore, we see no reason why courts may
not look to both types of cases for guidance on the application of Mental
Health Code Section 574.035.

In our review of
appellant=s medical records, we observed that between January
29, 2005 and May 22, 2005, there were eight notes by the same nurse as the
January 29 note, all with the same or nearly the same language as the January
29 note.  However, based on our review of the the medical records, Dr.
Altschuler=s testimony, and Dr. Altschuler=s report,  we
find no evidence of an overt act or continuing pattern of behavior.  We
acknowledge that appellant is mentally ill.   However, evidence
showing only that an individual is mentally ill and in need of hospitalization
does not meet the statutory requirements for confinement.   See In
re L.H., 183 S.W.3d at 911; In re K.D.C., 78 S.W.3d at 551; D.J.,
59 S.W.3d at 355B57; Johnstone, 961 S.W.2d at 389B90; Broussard,
827 S.W.2d at 622; In re J.S.C., 812 S.W.2d at 95. 

 

We are reluctant
to intervene in court-ordered treatment for anyone who is mentally ill.  See
In re J.K.K., 2003 WL 22996950 at *5; Johnstone, 961 S.W.2d at
389B90; Broussard,
827 S.W.2d at 622.  We are even more reluctant to intervene relative to
court-ordered treatment when the individual committed a violent act due to the
mental illness.  However, under former article 46.03 of the Code of
Criminal Procedure, we must apply civil commitment statutes to recommitment
hearings for persons found not guilty by reason of insanity.   See
Act of May 25, 1983, 68th Leg., R.S., ch. 454, 1983 Tex. Gen. Laws 2640,
2644B46 (repealed 2005)
(current version at Tex. Crim. Proc.
Code Ann. art. 46C.261 (Vernon Supp. 2006)).  Finally, we
understand why the trial court said: AThere is nothing
really clear to me.@  The evidence presented by the State
did not meet the clear-and-convincing standard set forth in the Mental Health
Code.[5]  See Tex. Health & Safety Code Ann. ' 574.035(e). 
Because we find no evidence of a recent overt act or a continuing pattern of
behavior as contemplated by the statute, the evidence is legally insufficient.[6]  We sustain appellant=s first
issue.  

In light of our
holding, we need not consider appellant=s remaining
issues.  Accordingly, we reverse the trial court=s order renewing
the prior order for inpatient extended mental health services, and we render
judgment denying the State=s application for renewal of the prior
order for extended mental health services. 

 

 

 

/s/        Charles
W. Seymore

 

Justice

 

Judgment rendered
and Majority and Dissenting Opinions filed February 20, 2007.

Panel consists of
Chief Justice Hedges and Justices Yates and Seymore. (Yates, J., dissenting.)

Publish C Tex. R. App.
P. 47.2(b).

 

 

 

 

 














[1]  Specifically, at the end of the hearing, after first stating
that, AI don=t think
anything is clear. . . . There=s nothing
really clear to me . . . ,@ and opining
the State and community have inadequate facilities to care for the mentally
ill, the trial court stated, 

Right now, at this point in time I
don=t feel that the community or you
would be safe in releasing you to a personal care home, which is really the
only thing that we have for you other than Rusk. . . . I=ll order you recommitted based on
the fact that I do find you are mentally ill and that you=re likely to cause harm to yourself
or others.  I=m not sure which, but I think there=s a possibility there in a personal
care home that, that would or could happen.

After the
State asked the trial court to make a finding regarding appellant=s Aability to make 

rational
and informed decisions as to whether he is to continue treatment,@ the trial court stated,

[A]side
from the fact that the Court finds that he is mentally ill, as a result of the
mental illness, he=s likely to cause harm to himself or others.  I=m not going to distinguish between the two because I
think based on his history he=s had ideation
of both [harm to himself and others] and acting out in one of those.





[2]  Although
appellant=s medical records were admitted
into evidence in their entirety, they were not filed with this Court.  We
issued an order that the medical records be delivered to this court.





[3]   We
note that Dr. Amina Abdula, the expert witness for appellant who met with
appellant one to two times a week for fifteen minutes from early September 2005
until and including the day of the hearing, testified that it does not make any
difference whether a paranoid schizophrenic can recall the details of their
violent act because Awhen the act is occurring, most of
the time, they are not aware of it . . . because they are in a psychotic state.@  However, she explained that
with medication and meeting with a therapist, they can talk about it.  Appellant
also told Dr. Abdulla Awhat happened, but he doesn=t know why he did it.@  





[4]  The January 29, 2005 note verbatim:

RN weekly level of observation: routine
orientation: name, place, posture: normal eye contact: short communication
barriers: mental status behaviors: self-converses speech: clear affect/mood:
depressed thought processes: impaired, delusional, paranoid thought content:
delusional, paranoid suicidal ideations: denies homicidal ideations: history of
homicide insight judgment:  poor attention span: brief memory: impaired
grooming/ hygiene: clean, self care activities of daily living: self care diet/
appetite: good neurological: alert respiratory: even and unlabored, HX, + PPD
skin: warm and dry cardiovascular: hyperlipidemia genitourianry: no known
problem gastrointestinal: no known problem musculoskeletal: moves all
extremeties well: treatments provided: meds.  Additional notes: MHMI self
converses, cannot hold a conversation.  He has been med compliant. 
Did not want to talk about meds.  Pt. states he is not having any problems
and is not paranoid.  He states he is not delusional.  Pt. is
med compliant.

(emphasis added).





[5]  We
recognize the Texas Legislature recently decided that annual recommitment
hearings will no longer be conducted under the Texas Mental Health Code for
persons found not guilty by reason of insanity.  The applicable  new
statute pertains to offenses committed on or after September 1, 2005. Moreover,
the legal standard will be whether the party requesting renewal Ahas established by clear and
convincing evidence that continued mandatory supervision and treatment are appropriate.@  Act of May 27, 2005, 78th
Leg. R.S., ch. 831, 2005 Tex. Gen. Laws 2841, 2849 (codified at Tex. Code Crim. Proc. Ann. Art.
46C.261)(emphasis added).

                                                                             






[6]  As a result of this holding, appellant may be allowed to
enter an outpatient treatment center where he will continue to receive
medication and be observed.  Under the former article 46.03 Code of
Criminal Procedure, applicable in this case, if appellant shows any signs of
deterioration, the administrators at the outpatient facility should notify the
administering trial court, at which time the trial court may conduct a hearing
to decide whether to recommit appellant.  See Act of May 25, 1983,
68th Leg., R.S., ch. 454, 1983 Tex. Gen. Laws 2640, 2644B46 (repealed 2005) (current version
at Tex. Crim. Proc. Code Ann.
art. 46C.261 (Vernon Supp. 2006)).