**Stephen M. GOLDWAIT, Appellant,**

v.

**The STATE of Texas, for the Best Interest and Protection of Stephen M. Goldwait, Appellee.**

**No. 01–96–01167–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 21, 1997.

S. John Mastroneglo, Houston, for Appellant.

Michael P. Fleming, Melinda Brents, Houston, for Appellee.

Before HEDGES, O'CONNOR and BASS *, JJ.

## OPINION

HEDGES, Justice.

Appellant, Stephen M. Goldwait, appeals his court-ordered commitment for temporary mental health services. He contends that (1) the trial court lacked personal jurisdiction, and (2) the State did not prove by clear and convincing evidence that he would cause immediate harm to himself or to others. We affirm.

## FACTS

Appellant's brothers, Patrick and Chris, flew to Boston where appellant resided out of concern for appellant's mental health. Their concern was based on appellant's bizarre behavior. Testimony indicated that appellant (1) wanted to start an international organization in order to provide his and his brothers' genetically superior blood to various hospitals to use for treatment of immune diseases; (2) had sold all of his belongings; (3) had jumped out of a bus because he feared that the bus driver was intentionally going to kill everyone; (4) feared that the CIA was after him; and (5) stated that he had been gassed by people who were after him. Appellant agreed to go with his brothers back to Houston. Once in Houston, appellant's bizarre behavior continued. Appellant's family initi-

---

* The Honorable Sam Bass, retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

ated involuntary commitment proceedings after appellant refused voluntary commitment. After evaluation and observation by a doctor, the trial court committed appellant for temporary mental health services.

## JURISDICTION

■ In point of error one, appellant contends that the trial court lacked personal jurisdiction. Specifically, appellant asserts that his presence in Texas was procured by his brothers' deception. Appellant contends that because he would not have been physically present but for this deception, the trial court lacked personal jurisdiction.

When his family initiated commitment proceedings, appellant was a resident of Massachusetts, but he was physically present in Houston. Notwithstanding appellant's brother's testimony that he led appellant to believe that he would "work with [appellant] to set the world free of illness," appellant never testified that his trip to Houston was deceptively procured. In fact, he denied the existence of the scheme that formed the basis of his brother's alleged trickery. Appellant stated that he traveled to Houston for vacation and to visit his family. In coming to Houston voluntarily, appellant subjected himself to the general jurisdiction of the State of Texas.

Furthermore, the Probate Court of Harris County had personal jurisdiction over appellant. Under section 574.001(b) of the Health & Safety Code, an application for court-ordered mental health services must be filed with the county clerk in the county in which the proposed patient either: (1) resides; (2) is found; or (3) is receiving mental health services by court order or under sections 573.001–.025. TEX. HEALTH & SAFETY CODE ANN. § 574.001(b) (Vernon Supp.1997). Appellant was found in Harris County at the time the application was filed.

We overrule point of error one.

## CLEAR AND CONVINCING EVIDENCE

In point of error two, appellant contends that, even if the trial court had jurisdiction over him, the State did not meet its burden by clear and convincing evidence that he would cause immediate harm to himself or others.

**Standard of Review**

■ The judge or jury may determine that a proposed patient requires court-ordered temporary mental health services only if the judge or jury finds from clear and convincing evidence that:

(1) the proposed patient is mentally ill; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to himself;

(B) is likely to cause serious harm to others; or

(C) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 1992). To be clear and convincing under this section, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood of serious harm to the proposed patient or others or the proposed patient's distress and deterioration of ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(c) (Vernon 1992). Expert diagnosis alone is not sufficient to confine a patient for compulsory treatment. *Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.—Houston [1st Dist.] 1996, no writ). The expert opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. *Id.*

■ On the appeal of a fact finding made by clear and convincing evidence, we review the record to determine if the trial court could reasonably find that the fact was highly probable. *Mezick,* 920 S.W.2d at 430. Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the facts. *Id.*

## Analysis

■ In this case, the trial court ordered that appellant be temporarily committed for mental health services. Under TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C) (Vernon 1992), it found that the evidence clearly and convincingly established that appellant was mentally ill and, as a result of that mental illness, if not treated, (1) would continue to suffer severe and abnormal mental, emotional, or physical distress; (2) would continue to experience deterioration of his ability to function independently; and (3) would be unable to make a rational and informed decision as to whether or not to submit to treatment. The trial court did not address the issues of whether appellant was likely to cause serious harm to himself or to others; given its other findings, it was not required to do so. After the trial court determined that appellant was mentally ill, it was required to determine only one of the three criteria listed in section 574.034(a)(2). *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2) (Vernon 1992); *Mezick v. State,* 920 S.W.2d at 430. It chose to temporarily commit appellant under section 574.034(a)(2)(C). Appellant's contention that the State was required to prove by clear and convincing evidence the first two criteria, therefore, is without merit. We must determine, then, whether the State met its burden in proving by clear and convincing evidence the elements under section 574.034(a)(2)(C).

■ At the hearing, Dr. Glass, appellant's examining physician who was qualified as an expert, testified that he examined appellant regularly and that, in his opinion, appellant was a paranoid schizophrenic. Because of his condition, Dr. Glass recommended that appellant not be released from the hospital at the time of the hearing. Dr. Glass testified that appellant's judgment was impaired beyond the point where he could function independently; appellant would further deteriorate mentally, emotionally, and physically; and he was incapable of making rational and informed decisions regarding the need for treatment.

Dr. Gritz, another expert, examined appellant once. He testified that appellant was not sufficiently mentally ill as to warrant his hospitalization, but admitted that his examination of appellant came several days after appellant had been hospitalized and stabilized with medication. He also admitted that the treating physician was in the best position to evaluate appellant's condition.

Appellant's brothers, Patrick and Chris, also testified at the hearing. Patrick had visited appellant in Boston on one occasion before his trip to bring appellant back. Patrick cited numerous events during his first visit that unnerved him. He also was disturbed by several subsequent phone calls and letters from appellant. Patrick heard that appellant had sold everything he owned, that he was losing contact with people he knew in Boston, and that the people there who were close to appellant feared for his well-being. Based upon those facts, Patrick decided to fly to Boston to bring Stephen back to Houston. At the airport, appellant appeared tired and stated that the reason he was in such condition was because he had just been "gassed" on his way to the airport and forced off the road. Appellant continued to exhibit extremely strange behavior, giving Patrick great cause for concern. At one point during Patrick's stay in Boston, appellant asked Patrick to stop the car and get suction supplies so that appellant could let his and Patrick's blood. Patrick was so concerned that he called his family, and Chris flew up immediately to help bring appellant back to Houston. Both convinced appellant that they would help him in his efforts to save the world with his genetically superior blood if he would return to Houston with them. In Houston, appellant continued his pattern of bizarre behavior. He slept on Patrick's driveway one night, telling Patrick that he did so because (1) the sun, stars, and moon all emitted particles that drained his gray matter; and (2) he was attracted to them. Chris supported much of Patrick's testimony.

Based upon the testimony of Dr. Glass and appellant's brothers, we hold that the State clearly and convincingly established the third criterion under section 574.034(a)(2).[1] *See*

---

1. We note that in a case recently issued by this court, *Johnstone v. State,* 961 S.W.2d 385, 390

(Tex.App.—Houston [1st Dist.] 1997) (publication forthcoming), another panel held that the State

*Mezick v. State,* 920 S.W.2d at 430 (holding testimony of a physician and sister sufficient to establish clearly and convincingly the necessary statutory criterion for temporary commitment).

We overrule point of error two.

We affirm the judgment of the trial court.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. Stephen M. Goldwait, a resident of Massachusetts, was lured into Texas by fraud, served with an arrest warrant, taken to a mental health facility, and, after a hearing, committed to that mental health facility. Goldwait's estranged Texas relatives enticed him to accompany them to Texas so they could have him involuntarily committed. I do not believe the Probate Court No. 3 of Harris County had personal jurisdiction over Stephen M. Goldwait.

Patrick Goldwait [1] testified he and his brother Chris flew to Boston to get their brother Stephen to come to Texas so they could commit him to a mental institution. At the time they initiated commitment proceedings in Texas, Stephen was a resident of Massachusetts, where he had lived for eight years.

Patrick admitted he lied to Stephen to get him to come to Texas:

Q: Telling Steve that you would come back to Houston to help him bring about. . . .

A: I led Steve to believe that I was going to work with him to set the world free of illness.

Q: That was a lie.

A. Sure.

Patrick also admitted that Stephen was a resident of Massachusetts for more than eight years:

Q: Isn't it true that Steve been [in Boston] for eight years away from your family while up there in Massachusetts, is that not correct?

A: He's lived in Massachusetts for eight years. Yes.

Q: He has not been a resident of Harris County for all those years, is that not correct?

A: I believe that's correct.

Although it is not relevant to the issue of jurisdiction, Patrick admitted that Stephen has family in the Boston area:

Q: And he has family still in the Boston area?

A: Yes.

Q: Who are they?

A: He has his ex-wife and his two children.

Stephen testified that he is estranged from his family in Texas and considers his children his only family. Stephen itemized the time he had spent with his Texas relatives over the last eight years: 20 hours with his brother Patrick, 30 hours with his brother Chris, two days with his mother, and no time with his two sisters.

Stephen testified about Patrick's trip to see him in Boston and the reason Stephen agreed to come to Texas:

Q: When Patrick came to Boston did he tell you why he was there?

A: He—*Pat misrepresented himself the entire time.*

Q: What did he—why did he tell you he was there?

A: He came because he loves me. We were going to be together, just spend time together.

. . . . .

Q: Did Pat at any time approach you in connection with you obtaining involun-

---

did not meet its burden under the clear and convincing standard. It did not prove that appellant had committed overt acts or exhibited a continuing pattern of behavior such that court-ordered treatment was warranted. *Id.* In this case, however, there is more than sufficient evi-

dence to support the trial court's order of temporary commitment and, thus, it is distinguishable from *Johnstone.*

1. For convenience, I will refer to the Goldwaits by their first name.

tary mental health service while you were in Boston on August 9?

A: Well, yes. While I was in Boston, yes.

Q: Tell the Court what basically happened in that conversation.

A: Pat—the first night we were in town, Pat got a hotel.... We stayed there for the night. The following morning when we got up to go to breakfast, he drove me to St. Elizabeth's Hospital. I said why were we at St. Elizabeth's, which is a church owned by the Archdiocese of Boston run by my boss, the archbishop of Boston. And Pat suggested that we both check ourselves in. And I asked him why. He said because he had spoken with my mother and she thought it would be a good idea for both of us to go in and get checked out. I said, well, I've been checked out. I'm fine. I don't need to. And he implored me that it would be a way to go. That's what we should do. And I disagreed with him at that point. I said I didn't feel it was necessary, and he said, fair enough. And then we later decided to return to Houston in the car trip. (Emphasis added.)

It is clear from Stephen's testimony that Patrick first tried to trick him into a joint, voluntary mental health commitment in Boston; when that did not work, Patrick decided to trick him to come to Texas where he could have him involuntarily committed.

The majority holds that Stephen admitted he came to Texas for a vacation. I think the majority misreads the record. Stephen was under the impression that the trip to Texas was for a vacation to visit his family. He testified that Patrick knew he had to be back in Boston and could only take a two week trip. Instead of a vacation, on his second day in Houston, Stephen was arrested by a constable and taken to a mental health facility.[2] After a hearing, Stephen was involuntarily committed.

The facts in this case are more outrageous than those in *Wyman v. Newhouse*, 93 F.2d

313 (2d Cir.1937), the seminal case on jurisdiction by fraud. In that case, Newhouse, a resident of New York, had been having an affair with Wyman, a resident of Florida. *Id.* at 314. Wyman implored Newhouse to visit her in Florida before she left the U.S.; she said she loved him; she claimed she was going to leave the U.S. and return to Ireland to take care of her sick mother. None of this was true. When Wyman landed at the airport in Florida, he was served with a lawsuit. After he returned to New York, a default judgment was taken against him. The Second Circuit held that a judgment procured by fraud lacks jurisdiction and is null and void. *Wyman,* 93 F.2d at 315.

There are no Texas cases on the issue of jurisdiction procured by fraud. *See* ROY W. McDONALD, TEXAS CIVIL PRACTICE § 11:24 (Sharon Von Haesler ed., 1992 ed.). Professor McDonald considered it a "settled general rule" that, in a civil case, the court will not exercise a jurisdiction which rests upon a service of process on a defendant who has been decoyed, enticed, or induced to come within its reach by any false representation, deceitful contrivance, or wrongful device for which the plaintiff is responsible. *Id.* (quoting from *Siro v. American Express Co.,* 99 Conn. 95, 121 A. 280 (1923)).

We should find the judgment void based on fraudulently procured jurisdiction.

---

**2.** The only bit of humor in this otherwise sad story is that the constable initially thought he was there to arrest Patrick, and chased him around the house, while Patrick yelled that he was not the one, it was Stephen.