ACCEPTED
01-15-00784-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/21/2015 2:41:43 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00784-CV

_____

**IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

12/21/2015 2:41:43 PM

CHRISTOPHER A. PRINE
Clerk

_____

IN THE INTEREST OF E.S.R.

_____

On Appeal from Probate Court No. 4
Harris County, Texas, Cause No. I-218340

---

**BRIEF OF APPELLEE STATE OF TEXAS**
_____

VINCE RYAN
Harris County Attorney

KEITH A. TOLER
Assistant County Attorney
State Bar No. 24088541

HARRIS COUNTY ATTORNEY'S OFFICE
1019 Congress, 15th Floor
Houston, Texas 77002
Phone: (713) 274-5265
Fax: (713) 755-8924
Email: Keith.Toler@cao.hctx.net

*Counsel for Appellee
State of Texas*

## IDENTITY OF PARTIES AND COUNSEL

| **Appellant** | **Counsel** |
|---|---|
| E.S.R. | TERESA SCARDINO<br>Attorney at Law<br>4309 Yoakum, Suite 360<br>Houston, Texas 77006<br>*Trial Counsel*<br><br>MICHAEL SCOTT THOMAS<br>Thomas & Williams, L.L.P.<br>2626 S. Loop West, Suite 561<br>Houston, Texas 77054<br>*Appellate Counsel* |

| **Appellee** | **Counsel** |
|---|---|
| State of Texas | VINCE RYAN<br>Harris County Attorney<br>*Of Counsel*<br><br>MELINDA BRENTS<br>Senior Assistant County Attorney<br>*Trial Counsel*<br><br>KEITH A. TOLER<br>Assistant County Attorney<br>*Appellate Counsel*<br><br>HARRIS COUNTY ATTORNEY'S OFFICE<br>1019 Congress, 15th Floor<br>Houston, Texas 77002 |

# TABLE OF CONTENTS

Identity of Parties and Counsel..................................................................................ii

Table of Contents...................................................................................................... iii

Index of Authorities ...................................................................................................v

Statement of the Case ................................................................................................2

Statement Regarding Oral Argument ........................................................................2

Statement Regarding Record References ...................................................................3

Reply Points...............................................................................................................3

Statement of Facts......................................................................................................4

Summary of the Argument ........................................................................................14

Argument ...................................................................................................................16

I.    Standard of Review.........................................................................................16

II.   The evidence is legally and factually sufficient to support the temporary commitment order...................................................................17

    A.    The State showed a recent overt act or continuing pattern of behavior tending to confirm the likelihood E.S.R. would seriously harm others. ................................................................19

        1.    E.S.R.'s threats to kill his parents suffice alone. ..........................20

        2.    E.S.R. also requested the return of his gun and hallucinated people stalking and assaulting him. ........................22

    B.    The State also showed a recent overt act or continuing pattern of behavior tending to confirm E.S.R.'s distress and the deterioration of his ability to function. ..................................24

III.  Because the temporary commitment order is valid, the order authorizing administration of psychoactive medication is also valid. .............................................................................................27

Conclusion & Prayer..................................................................29

Certificate of Compliance............................................................30

Certificate of Service ................................................................30

Appellee's Appendix ................................................................31

    1) Texas Health & Safety Code § 574.034

    2) Texas Health & Safety Code § 574.106

*Note*: The probate court orders are not included in the Appendix because they are sealed. *See* C.R. at 26, 27.

## INDEX OF AUTHORITIES

**Cases**                                                                                          **Page**

*G.H. v. State*,
Nos. 01-13-00422-CV, 01-13-00423-CV, 2013 WL 5613457
(Tex. App.—Houston [1st Dist.] Oct. 10, 2013, no pet.)......................20

*Goldwait v. State*,
961 S.W.2d 432 (Tex. App.—Houston [1st Dist.] 1997, no writ)........25

*Hagberg v. City of Pasadena*,
224 S.W.3d 477 (Tex. App.—Houston [1st Dist.] 2007, no pet.).........28

*J.M. v. State*,
178 S.W.3d 185
(Tex. App.—Houston [1st Dist.] 2005, no pet.)............................ 18, 24

*Mezick v. State*,
920 S.W.2d 427 (Tex. App.—Houston [1st Dist.] 1996, no pet.).........17

*M.S. v. State*,
137 S.W.3d 131 (Tex. App-Houston [1st Dist.] 2004, no pet.) ..... 16, 19

*K.T. v. State*,
68 S.W.3d 887 (Tex. App.—Houston [1st Dist.] 2002, no pet.).... 24, 26

*State ex. rel. E.R.*,
287 S.W.3d 297 (Tex. App.—Texarkana 2013, no pet.) ......................19

*State v. K.E.W.*,
315 S.W.3d 16 (Tex. 2010) ................................................. 16, 19, 20, 27

**Statutes**

Tex. Health & Safety Code

§ 574.034(a) (West 2015)........................................................17

§ 574.034(c) (West 2015)........................................................17

§ 574.034(d) (West 2015)........................................ 17, 19, 20

§ 574.106(a) (West 2015)........................................................27

No. 01-15-00784-CV

_____

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

_____

IN THE INTEREST OF E.S.R.

_____

On Appeal from Probate Court No. 4
Harris County, Texas, Cause No. I-218340

## BRIEF OF APPELLEE STATE OF TEXAS

To the Honorable Justices of the First Court of Appeals:

The probate court below properly ordered E.S.R. committed for temporary mental-health services and authorized doctors to administer psychoactive medication to E.S.R. Appellee State of Texas offered sufficient evidence to show E.S.R. was likely to seriously harm others and was suffering distress and deterioration of his ability to function. Thus, the State respectfully requests this Court affirm both the judgment committing E.S.R. and the final order authorizing administration of medication.

## STATEMENT OF THE CASE

E.S.R.'s father initiated this case by filing an application for emergency detention and to commit E.S.R. for temporary mental-health services.[1] Dr. Hawkins, E.S.R.'s treating doctor, filed a petition to authorize administration of psychoactive medication.[2] After a hearing, the probate court ordered E.S.R. committed for temporary inpatient mental-health services and authorized administration of psychoactive medication.[3] E.S.R. appeals both final orders.[4]

## STATEMENT REGARDING ORAL ARGUMENT

Appellee State of Texas believes the facts and legal arguments in this case are adequately presented in the briefs and records, and the decisional process would not be significantly aided by oral argument. However, the State acknowledges that this case involves a fact-specific inquiry and the State welcomes the opportunity to present oral argument if the Court determines it would be helpful.

---

[1] C.R. at 8, 14.

[2] C.R. at 19.

[3] C.R. at 26, 27.

[4] C.R. at 6.

The records on appeal are designated as follows:

- C.R.    –    Clerk's Record (filed Sept. 10, 2015)
- S.C.R.   –    Supplemental Clerk's Record (filed Sept. 22, 2015)
- R.R.    –    Reporter's Record (filed Oct. 12, 2015)

## REPLY POINTS

### Reply Point 1

To support an order for temporary commitment, the evidence must show an overt act or continuing pattern of behavior tending to confirm either (1) the likelihood of serious harm to self or others, or (2) the distress and deterioration of the ability to function independently. At the commitment hearing, the State showed E.S.R. threatened to kill his parents, requested the return of his gun, and claimed people stalked, assaulted, and shot at him. The State also showed the medication classes necessary to treat E.S.R. and the effect of his refusal to be treated. Was the evidence legally and factually sufficient to support the temporary commitment order?

### Reply Point 2

An order authorizing administration of psychoactive medication is only valid if the patient is under a valid temporary commitment order. E.S.R. challenges the medication order only because he argues the commitment order is not valid. But if the commitment order is valid, then is the medication order also valid?

- 3 -

## A. Events Prior to Filing the Commitment Application

E.S.R. is a middle-aged male with a long history of mental illness and who supports himself with disability payments.[5] Shortly after E.S.R. moved from Austin to Houston to live with his parents, his father filed an application to temporarily commit him for mental-health services (commitment application).[6] On August 24, 2015, only a few weeks after moving home, E.S.R. began ranting, yelling, and threatening to kill his parents if they turned him in for psychiatric care.[7] E.S.R. also requested his parents return his gun and complained people were stalking and attacking him through locked doors and people were shooting at him.[8]

The next day, E.S.R.'s father applied for emergency detention and a magistrate issued an order and warrant to apprehend and detain E.S.R.[9] He was detained on the same day and taken to Methodist Hospital for evaluation.[10]

---

[5]     *E.g.*, C.R. at 8; R.R. at 13:24 – 14:1.

[6]     C.R. at 8; R.R. at 15:10–17, 17:24 – 18:2.

[7]     C.R. at 10; R.R. at 7:22 – 8:6.

[8]     C.R. at 10; R.R. at 7:22 – 8:6.

[9]     C.R. at 12, 13, 14.

[10]     C.R. at 12, 15.

## B. The Commitment Application

Two days later, E.S.R.'s father filed the commitment application.[11] In it, he stated E.S.R. is mentally ill and, as a result, is likely to seriously harm himself or others. The application also stated E.S.R. is suffering substantial deterioration of his ability to function independently, to provide for his basic needs, and to make a rational and informed decision whether to submit to treatment.[12] E.S.R.'s father also filed an affidavit detailing E.S.R.'s ranting, yelling, threatening to kill his parents, requesting the return of his gun, and complaining someone was stalking and attacking him.[13]

Two doctors examined E.S.R. in the two days between his admission to Methodist Hospital and the filing of the commitment application on August 27.[14] Dr. Hawkins, the primary treating doctor, certified he examined E.S.R. and diagnosed him with schizophrenia and other medical and mental illnesses.[15] Relying on E.S.R.'s father's observations of E.S.R., particularly the threat to kill his parents, Dr. Hawkins determined E.S.R. is "currently psychotic and

---

[11]     C.R. at 8.

[12]     C.R. at 8.

[13]     C.R. at 10.

[14]     C.R. at 9, 15. *See also* C.R. at 8, 12.

[15]     C.R. at 9.

cannot care for himself due to [his psychosis] or protect himself from danger."[16] Dr. Hawkins also stated, "[E.S.R.] is paranoid and delusional and disorganized and as a result, he cannot care for himself or protect himself from danger[,]" and there is "[n]o less restrictive means to ensure [E.S.R.'s] safety or the safety of others."[17]

Dr. Smith also examined E.S.R. on August 26 and diagnosed him with unspecified psychosis.[18] Dr. Smith relied on E.S.R.'s father's observations that E.S.R. asked for his gun, threatened to kill his parents, and "has been attempting to break through doors at home."[19] Dr. Smith found that "[E.S.R.] is uncooperative with poor insight and judgment[,]" he is "[an] acute risk to himself and others[,]" he is "psychotic with delusions and paranoia[,]" and he "is likely to deteriorate further [without] treatment and hospitalization."[20] E.S.R.'s father filed both Drs. Hawkins' and Smith's certificates of medical examination with the commitment application.[21]

---

[16]    C.R. at 9.

[17]    C.R. at 9.

[18]    C.R. at 15.

[19]    C.R. at 15.

[20]    C.R. at 15.

[21]    C.R. at 8, 9, 15.

## C. The Medication Petition

On September 2, 2015, Dr. Hawkins filed a petition to administer psychoactive medication to E.S.R. (medication petition).[22] In his petition, Dr. Hawkins stated he diagnosed E.S.R. with schizophrenia, explaining E.S.R. "appears delusional [and] disorganized and as a result, he cannot care for himself, including making an informed decision on his own behalf."[23]

Dr. Hawkins determined E.S.R. needed treatment with psychoactive medication, including antidepressants, antipsychotics, anxiolytics/sedatives/hypnotics, and mood stabilizers.[24] E.S.R.'s prognosis with the proposed treatment was "fair to good," and the consequences without was "poor with further deterioration."[25] Dr. Hawkins considered group or individual therapy as an alternative to medication, but the therapy was "not demonstrated to be effective alone."[26]

---

[22]     C.R. at 19–20.

[23]     C.R. at 19.

[24]     C.R. at 19.

[25]     C.R. at 19.

[26]     C.R. at 20.

**D.    The Evidence Supporting the Commitment Application**

On September 3, 2015, the probate court heard the commitment application and the medication petition.[27] Counsel for the State began the commitment hearing by asking E.S.R.'s counsel to stipulate to the facts in E.S.R.'s father's affidavit. E.S.R. interrupted and the court warned E.S.R. about interrupting. No further discussion of or objection to the stipulation appears in the record.[28]

The State also offered Dr. Hawkins' testimony. He testified he had been working with E.S.R. for just over a week.[29] Despite E.S.R.'s lack of participation in the examination, Dr. Hawkins testified E.S.R. suffers from a chronic condition of either schizophrenia or schizoaffective disorder.[30] Dr. Hawkins acknowledged E.S.R.'s long history of mental illness going back to at least 1983.[31] He described E.S.R.'s behaviors as "disorganized and outside the norm," finding E.S.R. suffers from "paranoid delusions":

> He has fear that people are hurting him. . . . [H]e's concerned that folks are shooting [at] him. The family became concerned after [E.S.R.] requested they bring a firearm. He also has made threats

---

[27]    *See* R.R. at 1.

[28]    R.R. at 4:23 – 5:17.

[29]    R.R. at 6:8–10.

[30]    R.R. at 6:16–23.

[31]    R.R. at 7:3–8.

against the family . . . [and stated something like] if they had him committed to the psychiatric hospital that he would kill them or harm them in some way . . . "[32]

Dr. Hawkins believed E.S.R. was capable of acting on the threats.[33]

While E.S.R. was in the hospital on the emergency detention order, Dr. Hawkins observed E.S.R.'s "paranoia, believing things are happening that the staff are not observing . . . "[34] Dr. Hawkins testified E.S.R. has refused to cooperate with the diagnosis and he refuses medication and some work at the hospital.[35] Dr. Hawkins also testified E.S.R. is likely to cause serious harm to either himself or others as a result of his mental illness. Dr. Hawkins' primary concerns were the likelihood E.S.R. would harm others and his ability to care for himself.[36] According to Dr. Hawkins' testimony, "[E.S.R.'s] level of psychosis would make it difficult for him to care for himself and protect[] himself and mak[e] sure to do the things he needs to do to live."[37]

Dr. Hawkins also stated he believes E.S.R. would suffer severe and abnormal mental, emotional, and physical distress if he was released without

---

[32]    R.R. at 7:15 – 8:6.

[33]    R.R. at 11:3–5.

[34]    R.R. at 8:7–9.

[35]    R.R. at 6:20–23, 9:3–16.

[36]    R.R. at 10:19–25.

[37]    R.R. at 10:22–25.

treatment.[38] Dr. Hawkins did not believe E.S.R. could make decisions regarding his own basic needs, including health and safety, or that E.S.R. was able to make a rational and informed decision as to whether to commit to treatment.[39] Dr. Hawkins recommended a "complete medical workup" and treatment.[40] He opined, "I think if we can get his psychosis under control, he'd be more better able to participate with us in evaluating his medical concerns . . . I do believe that if we get him on medication, his symptoms will decrease and [he will] be able to work with us . . . "[41]

In response, E.S.R. testified that he disagreed with commitment and offered either to go to a hotel or to ask a friend to stay on his property.[42] E.S.R. denied threatening to harm himself or his parents.[43] He admitted he tried to get his gun for "self[-]defense" because "[he's] been stalked and assaulted for a number of times. [He] reported out to five police forces and gotten no actual response or help from them."[44] E.S.R. said that people tried to harm him during

---

[38]    R.R. at 11:6–9.

[39]    R.R. at 11:10–20.

[40]    R.R. at 11:21–24.

[41]    R.R. at 11:25 – 12:5.

[42]    R.R. at 13:14–23.

[43]    R.R. at 14:12–16.

[44]    R.R. at 14:17–24.

the entirety of his two years living in Austin, and that was a factor in his decision to move to Houston.[45] He admitted he was committed to mental-health services in Round Rock.[46] E.S.R. also testified that the manifestations of mental illness are due to neurological issues, not psychological issues, but offered no proof.[47] E.S.R. indicated he would consider neurological treatment, which Dr. Hawkins testified was possible while committed.[48]

## E. The Court Orders E.S.R. Temporarily Committed

At the hearing, the probate court ordered E.S.R. temporarily committed for mental-health services (commitment order or judgment).[49] The court stated, "the information that's in the two doctors' letters is very compelling, and . . . I wouldn't feel comfortable with myself if I did not commit [E.S.R] based upon the second and third criteria for commitment."[50] The court expressly found by clear and convincing evidence that:

> "[E.S.R.] is mentally ill and as . . . the result of that mental illness [1] is likely to cause harm to others; [and] [2](i) is suffering severe abnormal mental, emotional, or physical distress; (ii) is

---

[45]    R.R. at 15:10–21.

[46]    R.R. at 15:21–23.

[47]    R.R. at 16:21 – 17:23.

[48]    R.R. 18:11–16, 20:14 – 21:11.

[49]    R.R. at 23:3–14. *See also* C.R. at 27.

[50]    R.R. at 23:5–10.

experiencing substantial and mental or physical deterioration of his ability to function independently, except for reasons of indigence, to provide for [his] basic needs; including food, clothing, health, or safety; and (iii) is not able to make a rational and informed decision as to whether to submit to treatment."[51]

The court's judgment committed E.S.R. to Methodist Hospital up to 90 days for mental-health services.[52]

## F. The Court Authorizes the Administration of Medication

Immediately following the commitment hearing, the probate court heard the petition to authorize administration of psychoactive medication.[53] Again, Dr. Hawkins and E.S.R. testified. Dr. Hawkins testified to his diagnosis of schizophrenia or schizoaffective disorder and his prognosis that "with medication, potentially, [E.S.R.] can do fairly well; without . . . I think the outcome will be poor."[54]

E.S.R. denied having any delusions and testified he refused to cooperate with Dr. Hawkins because he disagrees with the treatment plan.[55] E.S.R. again stated his condition was neurological, not psychological, and Dr. Hawkins

---

[51]  C.R. at 27.

[52]  C.R. at 27.

[53]  R.R. at 23.

[54]  R.R. at 23:19–23, 24:20–24.

[55]  R.R. at 27:6–15, 29:20–24.

replied that he is unaware of any neurological conditions that cause persistent delusions.[56]

At the end of the hearing, the court authorized the administration of medication (medication order).[57] Recognizing the "serious problems set out in the doctor's letter[,]" the court reasoned that "Dr. Hawkins really has [E.S.R.'s] best interest at heart[.]"[58] The court expressly relied on Dr. Hawkins' testimony and reasoned that "the medication sought to be administered is the least invasive yet an effective form of treatment."[59] The medication order authorized Dr. Hawkins and Methodist Hospital to administer psychoactive medication to E.S.R., and E.S.R. timely appealed both orders.[60]

---

[56]    R.R. at 26:5–16, 27:16–19.

[57]    R.R. at 32:16–17. *See also* C.R. at 26.

[58]    R.R. at 28:25 – 29:2, 32:23–24.

[59]    C.R. at 26.

[60]    C.R. at 6, 26.

This appeal presents a fact-specific inquiry into the legal and factual sufficiency of two court orders. The probate court ordered E.S.R. temporarily committed for mental-health services and authorized administration of psychoactive medication. E.S.R. appeals both orders. But the evidence legally and factually supports both orders.

To support a temporary commitment order, the State of Texas need only show the presence of one statutory criterion by clear and convincing evidence. Here, the State showed two criteria: (1) E.S.R. was likely to harm others, and (2) E.S.R. was in distress and his ability to function independently was deteriorating.

The State showed E.S.R. threatened to kill his parents, requested his gun, hallucinated people were stalking and assaulting him through locked doors, and had delusions about people shooting at him. This behavior began shortly after E.S.R. moved to Houston from Austin to live with his parents, and just days before E.S.R.'s father initiated these proceedings. The behavior continued while he was in the hospital, where E.S.R. had paranoia, delusions, irritability, and agitation.

In addition, Dr. Hawkins testified at trial about his opinions and their factual bases. Dr. Hawkins relied on E.S.R.'s father's statements and his own

observations after treating E.S.R. for nearly a week. While E.S.R.'s verbal threats to kill his parents are sufficient alone to support the commitment order, the State offered other evidence tending to confirm E.S.R. was likely to cause serious harm to others, he was distressed, and his ability to function was deteriorating. Thus, the evidence is legally and factually sufficient to support the order temporarily committing E.S.R. for mental-health services.

Because the temporary commitment order is valid, the order authorizing medication is also valid. E.S.R. only argues the medication order is invalid based on his erroneous challenge to the commitment order. E.S.R. waived any other argument. Because the commitment order is valid, the medication order is also valid. Therefore, this Court should affirm both orders.

**ARGUMENT**

## I. Standard of Review

When a party challenges the sufficiency of clear and convincing evidence, the appellate court considers whether the evidence "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations . . . "[61] When reviewing the factual sufficiency of the evidence, the court considers "all the evidence to determine if it was sufficient to produce a firm belief or conviction in the mind of the fact finder of the allegations pleaded."[62] When reviewing the legal sufficiency of the evidence, on the other hand, the court considers "only the evidence and inferences tending to support the finding, and [the court] disregard[s] all contrary evidence and inferences."[63] If any probative evidence supports the finding, the court should uphold the decision.[64]

---

[61]    *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (citations omitted).

[62]    *M.S. v. State*, 137 S.W.3d 131, 135 (Tex. App-Houston [1st Dist.] 2004, no pet.) (citations omitted).

[63]    *Id.* (citations omitted). *See also K.E.W.*, 315 S.W.3d at 20.

[64]    *M.S.*, 137 S.W.3d at 135 (citations omitted).

**II. The evidence is legally and factually sufficient to support the temporary commitment order.**

The temporary commitment order is valid. Section 574.034 of the Mental Health Code authorizes a court to order temporary, involuntary mental-health services only if clear and convincing evidence shows a person is mentally ill and, as a result, the person:

- is likely to cause serious harm to self;
- is likely to cause serious harm to others; or
- is experiencing substantial mental or physical deterioration of the ability to function independently and is unable to decide whether to submit to treatment.[65]

To be clear and convincing, the evidence must include both (1) expert testimony supported by a factual basis and (2) evidence of a recent overt act or continuing pattern of behavior tending to confirm one of the three criteria listed above.[66] The court's order must specify which criterion forms the basis of its decision.[67] Although the order may be based on more than one criteria, a valid order requires only one.[68] The overt act or continuing pattern of behavior must

---

[65]    Tex. Health & Safety Code Ann. § 574.034(a) (West 2015).

[66]    Tex. Health & Safety Code Ann. § 574.034(d) (West 2015).

[67]    Tex. Health & Safety Code Ann. § 574.034(c) (West 2015).

[68]    *Mezick v. State*, 920 S.W.2d 427, 431 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (citations omitted) (finding that because one statutory criterion was met, reviewing court was not required to decide whether second criterion met).

relate to the criterion specified in the order.[69] For example, there must be an overt act showing a likelihood of harm to others if that is the specified criterion.

On appeal, E.S.R. challenges the State's evidence on the two criteria the probate court found to support the judgment: (1) likelihood of seriously harming others, and (2) distress and deterioration of E.S.R.'s ability to function. E.S.R. does not dispute that:

- he is mentally ill;[70]
- Dr. Hawkins' qualifies as an expert, as stipulated by E.S.R.;[71] and
- the temporary commitment order expressly bases its decision on two criteria.[72]

Thus, if the State's evidence supports a showing of either (1) a likelihood of serious harm to others or (2) distress and deterioration, then the commitment order is valid.

---

[69] *J.M. v. State*, 178 S.W.3d 185, 193 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citations omitted).

[70] Appellant's Brief at p. 11.

[71] R.R. at 6:4–7.

[72] C.R. at 27.

**A.** **The State showed a recent overt act or continuing pattern of behavior tending to confirm the likelihood E.S.R. would seriously harm others.**

The evidence was legally and factually sufficient to support finding E.S.R. was likely to seriously harm others. To satisfy this criterion, the State must show a likelihood E.S.R. will seriously harm others.[73] While the State need not show actual harm to others, it must show more than the presence of mental illness. For example, showing only that someone is intrusive and has poor boundaries with others is not enough.[74] But the Supreme Court in *State v. K.E.W.* found the following overt acts sufficiently showed a likelihood K.E.W. would seriously harm others:

- statements that he was assigned to impregnate specific women, including hospital workers and his stepdaughter;

- statement seeking access to certain female hospital workers;

- written plans detailing his mission and including names of specific women whom he firmly believed he must impregnate; and

- verbal insistence on searching for the women.[75]

---

[73] *K.E.W.*, 315 S.W.3d at 22–23 (citing Tex. Health & Safety Code Ann. § 574.034(d) (West 2015)). *See also State ex. rel. E.R.*, 287 S.W.3d 297, 305 (Tex. App.—Texarkana 2013, no pet.).

[74] *M.S.*, 137 S.W.3d at 137.

[75] *K.E.W.*, 315 S.W.3d at 26.

And this Court determined in *G.H. v. State* that G.H.'s threatening to kill hospital staff and throwing objects at workers were sufficient overt acts or continuing patterns of behavior to support a commitment order.[76]

### 1.    *E.S.R.'s threats to kill his parents suffice alone.*

Because the State must only show a likelihood of seriously harming others, E.S.R.'s threats to kill his parents is sufficient evidence of an overt act.[77] A verbal threat is a sufficient overt act.[78] The Mental Health Code authorizes commitment of a person whose statements "foreshadow violence."[79]

E.S.R.'s father first claimed E.S.R. threatened to kill his parents in an affidavit supporting the commitment application. Dr. Hawkins' testified about the threat at the hearing.[80] His certificate of medical examination also partly relied on the affidavit to conclude E.S.R. was psychotic and no less restrictive means would ensure the safety of E.S.R. and others.[81] The probate court

---

[76] *G.H. v. State*, Nos. 01-13-00422-CV, 01-13-00423-CV, 2013 WL 5613457, at *6 (Tex. App.—Houston [1st Dist.] Oct. 10, 2013, no pet.).

[77] *K.E.W.*, 315 S.W.3d at 22–23 (citing Tex. Health & Safety Code Ann. § 574.034(d) (West 2015)).

[78] *K.E.W.*, 315 S.W.3d at 26.

[79] *G.H.*, 2013 WL 5613457, at *4.

[80] *E.g.*, R.R. at 8:1–6.

[81] R.R. at 7:22 – 8:9; C.R. at 9.

- 20 -

expressly relied on Dr. Hawkins certificate in finding E.S.R. is likely to cause serious harm to others.[82]

Although E.S.R. denied threatening anyone, the factfinder discredited his testimony because it is contradicted by other evidence. For example, E.S.R.'s father and treating doctor both claimed E.S.R. made the threats. And E.S.R.'s testimony admitting other bizarre behavior—such as requesting a gun from his parents and hallucinating people were stalking and assaulting him— shows E.S.R. is willing to concede some overt acts except the threats. E.S.R. denied threatening to kill his parents because he does not want to be committed, and the threat alone is sufficient to commit him. Thus, E.S.R.'s self-serving testimony that he did not threaten his parents is inconsistent with other evidence.

E.S.R. argues on appeal that the evidence was insufficient partly because Dr. Hawkins did not testify about the date E.S.R. threatened his family. But the commitment application and affidavit show E.S.R. threatened his parents on August 24, the day before he was detained on an emergency warrant and just three days before his father initiated these proceedings.[83] Dr. Hawkins also testified the threats were made because E.S.R. did not want to be committed

---

[82]     R.R. at 23:5–7.

[83]     C.R. at 10. *See also* C.R. at 8, 12.

for psychiatric care.[84] That his father filed the application soon after E.S.R. moved to his parents' house shows the threats were made soon before the filing.

E.S.R. also argues Dr. Hawkins did not explain his diagnosis of schizophrenia or schizoaffective disorder. E.S.R. waived this argument by failing to cross-examine Dr. Hawkins on it. And E.S.R. concedes he is mentally ill. In any event, the alternate diagnosis is inconsequential because Dr. Hawkins' opinions were the same for either diagnosis—E.S.R.'s actions and behavior show he is likely to harm others.

Thus, E.S.R.'s threat alone is sufficient to support the commitment order.

### 2. E.S.R. also requested the return of his gun and hallucinated people stalking and assaulting him.

In addition to threatening to kill his parents, E.S.R. also:

- requested his parents return his gun;[85]
- thought he was being stalked and attacked through locked doors;[86]
- thought he was being shot at;[87] and
- believed things were happening in the hospital that staff did not see, and otherwise behaved with paranoia, irritability, and agitation.[88]

---

[84]    R.R. at 7:21 – 8:6.

[85]    *E.g.*, C.R. at 10; R.R. at 7:24–25, 8:15–16.

[86]    *E.g.*, C.R. at 10; R.R. at 7:20–22, 8:16–17.

[87]    R.R. at 7:21–25.

[88]    R.R. at 8:7–9.

All of the evidence showed a sufficient overt act or continuing pattern of behavior tending to confirm the likelihood E.S.R. will seriously harm others. Within a few weeks of moving to his parents' house in Houston, E.S.R.'s behavior caused his father to file the commitment application. Like K.E.W.'s statements of impregnating women and his detailed plans and insistence on searching for the women,[89] E.S.R.'s overt acts and continuing patterns of behavior support his temporary commitment. E.S.R. threatened to kill his parents if they turned him in for psychiatric care, sought return of his gun, hallucinated people were trying to harm him, and was irritable and agitated. These actions and continuing patterns of behavior are the kinds that the Mental Health Code seeks to address through temporary mental-health services.

E.S.R. argues that Dr. Hawkins did not testify to E.S.R.'s ownership, possession, custody, or control of a gun. But E.S.R.'s father's affidavit stated E.S.R. "requested the return of his gun . . . "[90] And the fact that E.S.R. lacked possession, custody, and control of the gun confirms the likelihood he may seriously harm someone: E.S.R.'s father knows E.S.R. and decided it best E.S.R. not have access to the gun. For E.S.R.'s own health, safety, and protection, the probate court ordered him committed for treatment. The

---

[89]     *See supra* text accompanying note 75.

[90]     C.R. at 10. *See also* R.R. at 8:15–16.

commitment order is supported by legally and factually sufficient evidence, and this Court should affirm it.

### B. The State also showed a recent overt act or continuing pattern of behavior tending to confirm E.S.R.'s distress and the deterioration of his ability to function.

The State's evidence of E.S.R.'s distress and deterioration of his ability to function was also sufficient to support the commitment order. Although refusal of medication alone is insufficient, it may suffice if the State also shows the necessary medication and the effect of the patient's refusal to take it.[91]

This was the fatal flaw in *J.M. v. State*, in which this Court found the evidence was legally and factually insufficient. Instead of showing what medication is necessary to help J.M. and the effect of his refusal to take it, the State argued that involuntary commitment and treatment was necessary because J.M. would not voluntarily submit to it. Without evidence of the necessary medication and the consequences of the refusal to take it, the *J.M.* Court described this reasoning as tautological, and rejected it.[92]

---

[91] *See J.M.*, 178 S.W.3d at 194–95 (citations omitted).

[92] *Id. See also K.T. v. State*, 68 S.W.3d 887, 893 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (finding patient's leaving hospital did no more than demonstrate she did not wish to be treated or to remain at hospital).

In *Goldwait v. State*, on the other hand, this Court found the evidence sufficient to support a temporary commitment order.[93] In *Goldwait*, the examining physician diagnosed Goldwait with paranoid schizophrenia and recommended he not be released. The physician opined that Goldwait's judgment was impaired beyond his ability to function properly, he would further deteriorate, and he was incapable of making a rational and informed decision about the need for treatment.[94] Goldwait's brother also testified about "unnerving events," including making disturbing phone calls and letters, selling all of his belongings, losing contact with friends, appearing tired, claiming he had been gassed and forced off the road recently, asking to remove his brother's blood, and continuing the bizarre behavior after coming to Houston with his brother.[95] This Court found that these overt acts and continuing patterns of behavior were sufficient to support the temporary commitment order.[96]

Here, the State showed E.S.R. refused medication,[97] what medication was necessary, the effect of E.S.R.'s failure to take it, and other overt acts or

---

[93]  *Goldwait v. State*, 961 S.W.2d 432, 435–36 (Tex. App.—Houston [1st Dist.] 1997, no writ) (citations omitted).

[94]  *Id.* at 435.

[95]  *Id.*

[96]  *Id.* (citations omitted).

[97]  R.R. at 6:11–22, 9:3 – 10:12. *See also* C.R. at 19.

continuing patterns of behavior tending to confirm E.S.R.'s distress and the deterioration of his ability to function independently. Dr. Hawkins agreed that E.S.R. should be treated with psychotic medication to begin improvement and then reevaluate as necessary.[98] He stated the medicine would help treat E.S.R.'s symptoms, such as being "disorganized and outside the norm" and suffering paranoia, delusions, irritability, and agitation.[99] Each of these overt acts and continuing patterns of behavior tend to confirm E.S.R.'s distress and the deterioration of his ability to function at the time of the hearing, not at some time in the future.

To the extent E.S.R. challenges the factual bases of Dr. Hawkins' opinions, E.S.R. is mistaken.[100] Dr. Hawkins relied on the information in E.S.R.'s father's affidavit. Dr. Hawkins also relied on his experience treating E.S.R. for almost a week at the time of the hearing.[101] He observed E.S.R. was disorganized and outside the norm, suffered paranoia, delusions, irritability, and agitation.[102] E.S.R. also refused to cooperate with Dr. Hawkins' evaluation

---

[98]    C.R. at 19; R.R. at 9:17 – 10:12.

[99]    R.R. at 7:15–21, 8:7–9, 9:17–23.

[100]    *See K.T.*, 68 S.W.3d at 893–94.

[101]    R.R. at 6:8–10, 7:22 – 8:6.

[102]    R.R. at 7:15–21, 8:7–9, 9:17–23.

and refused medication.[103] E.S.R. pleads "the Fifth" when Dr. Hawkins questions him about his delusions.[104]

Thus, the State's evidence was sufficient to show an overt act or continuing pattern of behavior tending to confirm E.S.R.'s distress and the deterioration of his ability to function independently. Because the commitment order was valid, this Court should affirm it.

## III.    Because the temporary commitment order is valid, the order authorizing administration of psychoactive medication is also valid.

E.S.R. challenges the medication order on one ground: that its validity depends on the validity of the commitment order, which E.S.R. disputes. A court may only authorize administration of psychoactive medication in limited circumstances, such as when a person is under a valid temporary commitment order.[105] When a party solely relies on its argument against the validity of a commitment order to argue that a dependent medication order is invalid, and an appellate court upholds the commitment order, the appellate court should also uphold the medication order.[106]

---

[103]    R.R. at 6:20–22, 9:15–16.

[104]    R.R. at 8:17–22.

[105]    Tex. Health & Safety Code Ann. § 574.106(a) (West 2015).

[106]    *K.E.W.*, 315 S.W.3d at 26.

On appeal, E.S.R. only challenges the validity of the medication order on the erroneous ground the commitment order is invalid.[107] He waived any other argument not raised in his appellate brief.[108] Therefore, because the commitment order was valid, this Court should also affirm the medication order.

---

[107]    Appellant's Brief at pp. 15–16.

[108]    *E.g.*, *Hagberg v. City of Pasadena*, 224 S.W.3d 477, 480–81 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citations omitted).

## CONCLUSION & PRAYER

E.S.R.'s behavior is the kind the Legislature intended to commit a person for temporary, involuntary mental-health services under the Mental Health Code. The Legislature has limited this remedy to three narrow circumstances primarily involving the health and safety of the mentally ill person and others. E.S.R. threatened to kill his parents, requested they return his gun, and hallucinated and deluded about people stalking and assaulting him. This is the kind of behavior warranting temporary commitment to protect the health and safety of E.S.R. and others. Because the evidence is sufficient, this Court should affirm the final judgment and medication order.

Respectfully submitted,

VINCE RYAN
Harris County Attorney

/s/  Keith A. Toler

KEITH A. TOLER
Assistant County Attorney
State Bar No. 24088541

HARRIS COUNTY ATTORNEY'S OFFICE
1019 Congress, 15th Floor
Houston, Texas 77002
Phone: (713) 274-5265
Fax: (713) 755-8924
Email: Keith.Toler@cao.hctx.net

*Counsel for Appellee*
*State of Texas*

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 4,765 words, as determined by the computer software's word-count function, excluding the portions of the document exempted by Texas Rule of Appellate Procedure 9.4(i)(1). I further certify that the form of this brief meets the requirements of Texas Rule of Appellate Procedure 9.4.

/s/  Keith A. Toler
KEITH A. TOLER
*Counsel for Appellee*

## CERTIFICATE OF SERVICE

I certify that on December 21, 2015, I served a true and correct copy of this brief on Michael Scott Thomas, counsel for Appellant, by electronic transmission via the electronic filing manager or by email.

Michael Scott Thomas
Thomas & Williams, L.L.P.
2626 S. Loop West, Suite 561
Houston, Texas 77054
mstlawyer@aol.com

*Counsel for Appellant*

/s/  Keith A. Toler
KEITH A. TOLER
*Counsel for Appellee*

No. 01-15-00784-CV

_____

**IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS**

_____

IN THE INTEREST OF E.S.R.

_____

On Appeal from Probate Court No. 4
Harris County, Texas, Cause No. I-218340

---

**APPELLEE'S APPENDIX**
_____

**List of Documents**

1)      Texas Health & Safety Code § 574.034 ..........................................Tab 1

2)      Texas Health & Safety Code § 574.106 ..........................................Tab 2

# TAB #1

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

> Vernon's Texas Statutes and Codes Annotated
>   Health and Safety Code (Refs & Annos)
>     Title 7. Mental Health and Intellectual Disability
>       Subtitle C. Texas Mental Health Code
>         Chapter 574. Court-Ordered Mental Health Services (Refs & Annos)
>           Subchapter C. Proceedings for Court-Ordered Mental Health Services

V.T.C.A., Health & Safety Code § 574.034

§ 574.034. Order for Temporary Mental Health Services

Effective: April 2, 2015
Currentness

(a) The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1) the proposed patient is a person with mental illness ; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to the proposed patient ;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability,

except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

(b) The judge may order a proposed patient to receive court-ordered temporary outpatient mental health services only if:

(1) the judge finds that appropriate mental health services are available to the proposed patient; and

(2) the judge or jury finds, from clear and convincing evidence, that:

(A) the proposed patient is a person with mental illness ;

(B) the nature of the mental illness is severe and persistent;

(C) as a result of the mental illness, the proposed patient will, if not treated, continue to:

(i) suffer severe and abnormal mental, emotional, or physical distress; and

(ii) experience deterioration of the ability to function independently to the extent that the proposed patient will be unable to live safely in the community without court-ordered outpatient mental health services; and

(D) the proposed patient has an inability to participate in outpatient treatment services effectively and voluntarily, demonstrated by:

(i) any of the proposed patient's actions occurring within the two-year period which immediately precedes the hearing; or

(ii) specific characteristics of the proposed patient's clinical condition that make impossible a rational and informed decision whether to submit to voluntary outpatient treatment.

(c) If the judge or jury finds that the proposed patient meets the commitment criteria prescribed by Subsection (a), the judge or jury must specify which criterion listed in Subsection (a)(2) forms the basis for the decision.

(d) To be clear and convincing under Subsection (a), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:

(1) the likelihood of serious harm to the proposed patient or others; or

(2) the proposed patient's distress and the deterioration of the proposed patient's ability to function.

(e) To be clear and convincing under Subdivision (b)(2), the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm:

(1) the proposed patient's distress;

(2) the deterioration of ability to function independently to the extent that the proposed patient will be unable to live safely in the community; and

(3) the proposed patient's inability to participate in outpatient treatment services effectively and voluntarily.

(f) The proposed patient and the proposed patient's attorney, by a written document filed with the court, may waive the right to cross-examine witnesses, and, if that right is waived, the court may admit, as evidence, the certificates of medical examination for mental illness. The certificates admitted under this subsection constitute competent medical or psychiatric testimony, and the court may make its findings solely from the certificates. If the proposed patient and the

proposed patient's attorney do not waive in writing the right to cross-examine witnesses, the court shall proceed to hear testimony. The testimony must include competent medical or psychiatric testimony. In addition, the court may consider the testimony of a nonphysician mental health professional as provided by Section 574.031(f).

(g) An order for temporary inpatient or outpatient mental health services shall state that treatment is authorized for not longer than 90 days. The order may not specify a shorter period.

(h) A judge may not issue an order for temporary inpatient or outpatient mental health services for a proposed patient who is charged with a criminal offense that involves an act, attempt, or threat of serious bodily injury to another person.

(i) Repealed by Acts 2013, 83rd Leg., ch. 1170 (S.B. 646), § 11.

**Credits**
Added by Acts 1991, 72nd Leg., ch. 76, § 1, eff. Sept. 1, 1991. Amended by Acts 1993, 73rd Leg., ch. 107, § 6.49, eff. Aug. 30, 1993; Acts 1995, 74th Leg., ch. 770, § 7, eff. June 16, 1995; Acts 1997, 75th Leg., ch. 744, § 5, eff. Sept. 1, 1997; Acts 2013, 83rd Leg., ch. 1170 (S.B. 646), § 11, eff. Sept. 1, 2013; Acts 2015, 84th Leg., ch. 1 (S.B. 219), § 3.1379, eff. April 2, 2015.

V. T. C. A., Health & Safety Code § 574.034, TX HEALTH & S § 574.034
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB #2

Vernon's Texas Statutes and Codes Annotated
  Health and Safety Code (Refs & Annos)
    Title 7. Mental Health and Intellectual Disability
      Subtitle C. Texas Mental Health Code
        Chapter 574. Court-Ordered Mental Health Services (Refs & Annos)
          Subchapter G. Administration of Medication to Patient Under Court
          Order for Mental Health Services

V.T.C.A., Health & Safety Code § 574.106

§ 574.106. Hearing and Order Authorizing Psychoactive Medication

Effective: September 1, 2009
Currentness

(a) The court may issue an order authorizing the administration of one or more classes of psychoactive medication to a patient who:

(1) is under a court order to receive inpatient mental health services; or

(2) is in custody awaiting trial in a criminal proceeding and was ordered to receive inpatient mental health services in the six months preceding a hearing under this section.

(a-1) The court may issue an order under this section only if the court finds by clear and convincing evidence after the hearing:

(1) that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient; or

(2) if the patient was ordered to receive inpatient mental health services by a criminal court with jurisdiction over the patient, that treatment with the proposed medication is in the best interest of the patient and either:

(A) the patient presents a danger to the patient or others in the inpatient mental health facility in which the patient is being treated as a result of a mental disorder or mental defect as determined under Section 574. 1065; or

(B) the patient:

(i) has remained confined in a correctional facility, as defined by Section 1.07, Penal Code, for a period exceeding 72 hours while awaiting transfer for competency restoration treatment; and

(ii) presents a danger to the patient or others in the correctional facility as a result of a mental disorder or mental defect as determined under Section 574.1065.

(b) In making the finding that treatment with the proposed medication is in the best interest of the patient, the court shall consider:

(1) the patient's expressed preferences regarding treatment with psychoactive medication;

(2) the patient's religious beliefs;

(3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication;

(4) the consequences to the patient if the psychoactive medication is not administered;

(5) the prognosis for the patient if the patient is treated with psychoactive medication;

(6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and

(7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.

(c) A hearing under this subchapter shall be conducted on the record by the probate judge or judge with probate jurisdiction, except as provided by Subsection (d).

(d) A judge may refer a hearing to a magistrate or court-appointed associate judge who has training regarding psychoactive medications. The magistrate or associate judge may effectuate the notice, set hearing dates, and appoint attorneys as required in this subchapter. A record is not required if the hearing is held by a magistrate or court-appointed associate judge.

(e) A party is entitled to a hearing de novo by the judge if an appeal of the magistrate's or associate judge's report is filed with the court within three days after the report is issued. The hearing de novo shall be held within 30 days of the filing of the application for an order to authorize psychoactive medication.

(f) If a hearing or an appeal of an associate judge's or magistrate's report is to be held in a county court in which the judge is not a licensed attorney, the proposed patient or the proposed patient's attorney may request that the proceeding be transferred to a court with a judge who is licensed to practice law in this state. The county judge shall transfer the case after receiving the request, and the receiving court shall hear the case as if it had been originally filed in that court.

(g) As soon as practicable after the conclusion of the hearing, the patient is entitled to have provided to the patient and the patient's attorney written notification of the court's determinations under this section. The notification shall include a statement of the evidence on which the court relied and the reasons for the court's determinations.

(h) An order entered under this section shall authorize the administration to a patient, regardless of the patient's refusal, of one or more classes of psychoactive medications specified in the application and consistent with the patient's diagnosis. The order shall permit an increase or decrease in a medication's dosage, restitution of medication authorized but discontinued during the period the order is valid, or the substitution of a medication within the same class.

(i) The classes of psychoactive medications in the order must conform to classes determined by the department.

(j) An order issued under this section may be reauthorized or modified on the petition of a party. The order remains in effect pending action on a petition for reauthorization or modification. For the purpose of this subsection, "modification" means a change of a class of medication authorized in the order.

(k) This section does not apply to a patient who receives services under an order of protective custody under Section 574.021.

(l) For a patient described by Subsection (a-1)(2)(B), an order issued under this section:

(1) authorizes the initiation of any appropriate mental health treatment for the patient awaiting transfer; and

(2) does not constitute authorization to retain the patient in a correctional facility for competency restoration treatment.

**Credits**

Added by Acts 1993, 73rd Leg., ch. 903, § 1.08, eff. Aug. 30, 1993. Amended by Acts 1995, 74th Leg., ch. 770, § 12, eff. June 16, 1995; Acts 2005, 79th Leg., ch. 717, § 3, 4, eff. June 17, 2005; Acts 2009, 81st Leg., ch. 334, § 8, eff. Sept. 1, 2009; Acts 2009, 81st Leg., ch. 624, § 1, eff. June 19, 2009.

V. T. C. A., Health & Safety Code § 574.106, TX HEALTH & S § 574.106
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.